**WILLKIE FARR & GALLAGHER LLP**
Krista S. Schwartz (Bar No. 303604)
  kschwartz@willkie.com
Barrington Dyer (Bar No. 264762)
  bdyer@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

**WILLKIE FARR & GALLAGHER LLP**
Aliza George Carrano (*Pro Hac Vice* pending)
  acarrano@willkie.com
Dane Sowers (*Pro Hac Vice* pending)
  dsowers@willkie.com
1875 K Street, N.W.
Washington, DC  20006
Tel: (202) 303-1000

**WILLKIE FARR & GALLAGHER LLP**
Devon W. Edwards (*Pro Hac Vice* pending)
  dedwards@willkie.com
787 Seventh Ave.
New York, NY 10019
Telephone: (212) 728-8000

Attorneys for Plaintiff
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC.<br><br>                    Plaintiff,<br><br>     v.<br><br>OPTICAL SYSTEMS DESIGN LLC.,<br><br>                    Defendant. | Case No. 2:24-cv-10515-DSF-JC<br><br>**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF LACHES, EQUITABLE ESTOPPEL, NO TRADEMARK INFRINGEMENT AND NO UNFAIR COMPETITION**<br><br>JURY TRIAL DEMANDED |

Plaintiff Synopsys, Inc. ("Synopsys") submits the following Complaint against Defendant Optical Systems Design, LLC ("OSD") for declaratory judgment that OSD's claims are barred by the doctrines of laches and equitable estoppel; and that Synopsys has not infringed either under the Lanham Act or the common law upon OSD's unregistered trademark, or committed unfair competition by using its own registered SYNOPSYS® trademark.

## NATURE OF THE ACTION

1.     Synopsys is a global software leader, with its primary business in the electronic design automation ("EDA") and semiconductor intellectual property ("IP") industry.  Synopsys develops, manufactures, sells, and licenses products and services that enable designers to create, model and verify complex integrated circuit designs from concept to silicon.  Since 1986, engineers around the world have used Synopsys technology to design and create billions of integrated circuits and systems.  In addition to EDA and IP, Synopsys also invests in and markets goods and services for other industry segments, including:  artificial intelligence and machine learning; cloud services; data analytics; design; image processing; modeling and simulation; and manufacturing.  Founded in 1986, Synopsys is a publicly traded company with more than 20,000 employees worldwide across its dozens of offices.

2.     Synopsys' brand has acquired worldwide recognition, and it holds dozens of registered trademarks among its vast intellectual property portfolio.  Several of Synopsys' pending applications and incontestable registrations at the United States Patent and Trademark Office ("USPTO") incorporate the mark SYNOPSYS®, including U.S. Reg. Nos. 1601521 and 1618482, both filed March 30, 1989 and registered in 1990.

3.     More than 14 years ago, in October 2010, Synopsys acquired Optical Research Associates ("ORA").  ORA's primary products were software programs called CODE V®, which was first released in 1975, and LightTools®.  Synopsys' acquisition of ORA closed on October 7, 2010, and was widely publicized, including through news reports, press releases, and on Synopsys' website, www.synopsys.com.  *See*, *e.g.*, Exs. 1–12.  Since that time, Synopsys, like ORA before it, has continuously invested substantial resources into developing, marketing and selling CODE V® and LightTools®, and they remain popular optical design products to this day.  In addition to CODE

AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

V® and LightTools®, Synopsys currently offers a variety of other products and services for the design, analysis, prototyping, optimizing, rendering, and simulation of optical and photonic systems and devices, including:  Synopsys ImSym™; Synopsys LucidShape®; Synopsys RSoft™ Photonic Device Tools; optical engineering services; and optical scattering measurement services.  Thus, for more than 14 years, Synopsys has invested in marketing optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services with its SYNOPSYS® marks, increasing its customer base, and enhancing customer goodwill.

4.    Since 1986, including throughout the nearly decade and a half since Synopsys acquired ORA, it has coexisted with Defendant OSD, a much smaller company which operates solely in the optical lens design industry.  OSD has never expanded into any other industry or even any other part of the larger optical and photonics analysis, prototyping, optimizing, rendering, and simulation industry.  By its own admission, OSD has not invested any meaningful amount in marketing its own software product, which it calls SYNOPSYS.  *See*, *e.g.*, Exs. 13–14.  As a result, OSD has achieved little consumer recognition and occupies only a *de minimis* share of the optical lens design market, while Synopsys' CODE V® is a leading software solution in the optical lens design field.  In fact, the majority of OSD's revenues have historically come from its lens design consulting business, not its sale of software.

5.    OSD has had at least constructive notice of Synopsys' use of its SYNOPSYS® mark since Synopsys first registered those trademarks in 1990.  OSD has also had constructive notice from Synopsys' filings with the USPTO; for example, on October 23, 2020, Synopsys filed a copy of a December 2019 "Code V Installation Guide" (which featured the SYNOPSYS® mark on the second page of the manual) with the U.S. Patent and Trademark Office as part of its 10 year renewal application for U.S. Registration No. 1618482 (the registration for SYNOPSYS® in International Class 009 re Computer Programs and Program Manuals, All Sold As a Unit, for Use in Electronic Circuitry Applications).  Exs. 35–36.

6.    Additionally, OSD has had actual notice since 2010 of Synopsys' presence in the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation sector, and that Synopsys was using its registered and incontestable SYNOPSYS® mark in connection with the

AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

sale of optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation goods and services.

7.    Upon information and belief, after Synopsys announced its acquisition of ORA, OSD's prior owner, Don Dilworth, actively approved of Synopsys' use of its trademarks in connection with the sale of optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services, telling a Synopsys executive that Synopsys' purchase of ORA had substantially benefitted his business by driving traffic to OSD's website.

8.    Acting upon its knowledge of Synopsys' activities in the market for optical design software, and starting as early as 2016, OSD began to actively seek a business relationship with Synopsys.  OSD first aimed to enter into a collaboration between the two companies and later attempted to sell its entire business, including its common law trademarks, to Synopsys.  After several rounds of correspondence between OSD and Synopsys, on April 24, 2018, Mr. Dilworth, the then-owner of OSD, travelled to Pasadena, California, to meet the Synopsys Code V® team for an all-day meeting to discuss Synopsys' potential acquisition of OSD, including its trademarks. Synopsys eventually made an offer to acquire OSD, including its trademarks.  Mr. Dilworth did not accept the offer and eventually sold OSD to its current owner, Ms. Kit Cheong, in 2019.  After the sale of OSD to Ms. Cheong, Synopsys continued to raise the prospect of acquiring OSD's common law trademark with Ms. Cheong.

9.    Not once during the course of any of those business negotiations did OSD, under either owner, raise objections to or demand that Synopsys cease the use of its SYNOPSYS® marks in connection with optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services, or with any other products or services.  OSD also did not bring or threaten litigation during these many years of coexistence.

10.    In June 2024, after Synopsys had been using its brand name in commerce for nearly 40 years and in connection with optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services for more than 13 years, OSD for the first time threatened legal claims against Synopsys, sending a letter through its counsel.  In that letter and subsequent ones, OSD demanded that Synopsys cease *all uses* of its own trade name, even those

unrelated to the provision of optical lens design software and services—notwithstanding nearly 40 years of investment into Synopsys' branding, and the resulting global renown that Synopsys has achieved.  Alternatively, OSD demanded that Synopsys pay tens of millions to acquire OSD's common-law trademark—an amount that, upon information and belief, greatly exceeds both OSD's total revenue, from products as well as services, over the entire course of its operation and the purchase price Ms. Cheong paid for all of the assets of OSD, including its trademarks, just five years ago.

11.    OSD's prior actions lay bare the bad faith underlying its untimely allegations, bely any claim to harm, and bar any cause of action as a matter of law.  OSD's delay in surfacing its claim has no reasonable justification, especially after it failed to act for more than a decade after Synopsys acquired ORA and actively acquiesced to Synopsys' entry into the optical design software field.  By contrast, Synopsys would be substantially prejudiced if forced to relinquish the brand recognition it has spent decades developing, both in the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services industry and, more generally, in the other sectors where it does business.

12.    Moreover, OSD's long-precluded allegations also fail on their face because Synopsys has not infringed upon any common law trademark rights held by OSD or unfairly competed against OSD by using the registered mark SYNOPSYS®.  It is Synopsys, not OSD, that has made significant expenditures in marketing and developing customer goodwill in connection with the SYNOPSYS® mark.  OSD has not pointed to any acts by Synopsys likely to give rise to confusion as between Synopsys' offerings and OSD's, nor any wrongful conduct by Synopsys in marketing and selling its own products.  That is especially true given the high price of the goods and services sold by both companies, and the high level of sophistication of consumers in the market for optical and photonic software and services, which primarily comprise large corporations, and academic and research institutions.  Moreover, customers purchase their optical lens design software directly from Synopsys or OSD, rather than through a third party, and build active relationships with those vendors as they purchase, configure and set up the software programs.  It is simply implausible that

- 4 -

those in the market for Synopsys' or OSD's software are likely to confuse one company's offerings for the other's.

13.     Accordingly, and as more specifically alleged herein, Synopsys brings this suit for declaratory judgment that the doctrines of laches and equitable estoppel bar OSD's newly-raised claims, and that Synopsys has not infringed OSD's unregistered trademark or competed unfairly against OSD.

## PARTIES

14.     Synopsys is a corporation organized under Delaware law with its principal place of business in Santa Clara County at 675 Almanor Ave., Sunnyvale, California 94085.  Synopsys also has places of business in this district at 199 South Los Robles Ave., Suite 400, Pasadena, California 91101 and 20 Pacifica, Suite 1150, Irvine, California 92618.

15.     Upon information and belief, OSD is an Arizona limited liability company, with its principal place of business at 2102 N. Country Club Rd., Suite 12, Tucson, AZ 85716.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, and 1338(a), and 28 U.S.C. § 2201, at least because this litigation arises under the federal Lanham Act, 17 U.S.C. § 1051 et seq.

17.     This Court has supplemental subject matter jurisdiction over the pendent common law claims under 28 U.S.C. § 1367 because these claims are so related to Synopsys' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

18.     This Court has personal jurisdiction over OSD because it has systematically and continuously engaged in substantial business activities in and directed to the State of California and this District, including contacts with California-headquartered corporations and the advertising and sale of its products to California residents within this District.

19.     Between 2016 and 2019, OSD conducted ongoing business negotiations involving the potential sale of OSD and its trademarks with Synopsys employees in Synopsys' Pasadena, California office located within this district.  Synopsys' optical and photonic design, analysis,

prototyping, optimizing, rendering, and simulation software and services business has a substantial presence in Pasadena, CA as a result of its acquisition of ORA, which was headquartered in Pasadena, CA.  In addition to lengthy correspondence between the parties, OSD's prior owner, Mr. Dilworth, visited Synopsys' Pasadena office for a full day meeting on April 24, 2018 in connection with those negotiations.  Synopsys also conducted communications from this district to OSD's new owner, Kit Cheong.  And, since June 2024, OSD has sent multiple letters, through counsel, to Synopsys in California in connection with its allegations of trademark infringement.

20.    Thus, OSD is subject to the personal jurisdiction of this Court, and amenable to service of process pursuant to the California Long-Arm Statute, Cal. Civ. Proc. Code § 413.10, and Fed R. Civ. P. 4(e).

21.    This is an action for declaratory judgment under 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties.

22.    There is a real, substantial, and justifiable issue in controversy between the parties regarding OSD's purported trademark rights and Synopsys' right to continue using its SYNOPSYS® mark, including in connection with its optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services business.

23.    OSD has threatened litigation against Synopsys, and has asserted that Synopsys' marketing and sale of products, including but not limited to optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services, constitutes infringement of OSD's unregistered SYNOPSYS™ mark.

24.    Synopsys has a real and reasonable apprehension of being sued, including under the Lanham Act, by OSD.  OSD's communications have caused and continue to threaten to cause injury to Synopsys, including by sowing doubt about Synopsys' right to continue using its famous and incontestable SYNOPSYS® mark in commerce without disruption.

25.    Moreover, OSD has taken actions before the United States Patent and Trademark Office ("USPTO") that evidence the existence of a case or controversy between the parties.  On October 31, 2024, OSD filed for an extension of time to file an opposition to Synopsys' pending trademark application No. 97,904,314, for SYNOPSYS.  Additionally, on March 15, 2024, OSD

- 6 -

filed its own trademark application to register that same mark, Application No. 98451705, in a class in which Synopsys has already obtained incontestable status.

26.    Synopsys is entitled to judgment declaring that OSD's claims are barred by the doctrines of laches and equitable estoppel; and that Synopsys is not liable to OSD for any claims arising from its use of its registered SYNOPSYS® trademark, including any claim of trademark infringement under the Lanham Act or common law, or any claim of unfair competition.

## FACTUAL BACKGROUND

### A.    Synopsys and its Acquisition of ORA

27.    Since its founding in 1986, Synopsys has been a worldwide leader in software and related services for the technology industry. Synopsys initially focused its efforts on the EDA and IP industry, offering products and services to help its customers design, develop, test and verify semiconductor chips. In the nearly 40 years since Synopsys launched its first product, engineers around the world have used Synopsys technology to design and create billions of integrated circuits and systems.

28.    Synopsys is a publicly traded company, a member of the S&P 500, and has more than 20,000 employees worldwide.

29.    Since its founding, Synopsys has invested substantial resources into its own intellectual property, including its branding and trademarks. In addition to its portfolio of thousands of utility patents, Synopsys currently holds 51 active, registered trademarks with the USPTO, including U.S. Reg. Nos. 1601521 and 1618482, each for SYNOPSYS®, in U.S. classes 100 and 38 and international classes 42 and 9, respectively. Applications for each of these trademarks were filed on March 30, 1989 and the two were registered on June 12, 1990 and October 23, 1990, respectively. On August 5, 1996, Synopsys filed affidavits of incontestability for each of these trademarks, which the USPTO received and acknowledged. Synopsys has consistently and continuously branded its software, user manuals and promotional materials with the Synopsys mark. In addition, Synopsys has continuously operated a website at www.synopsys.com since 1994.

30.    In the decades since it began operations, Synopsys has continuously expanded its business into goods and services in the technology industry outside of the EDA and IP sector.

- 7 -

Relevant to this case, on October 7, 2010, Synopsys acquired ORA, a leading provider of optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services.

31.    Optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services software is used to design and optimize applications that require light to be controlled or manipulated.  Engineers use optical design products in connection with optical components and systems, such as lenses prisms and mirrors, which ultimately are incorporated into products such as cameras, telescopes, semiconductor lithography equipment, projectors, laptop displays, automotive lighting, and solid state lighting using LEDs.

32.    One ORA product that Synopsys acquired was CODE V®, which is used to design optical components and systems such as lenses, mirrors, and prisms.  CODE V®, which stands for Computer-aided Optical Design and Evaluation Version '5,'" was first released in 1975, but its precursors date even earlier, to the 1960s.  CODE V® was the first optical design software to introduce many features and capabilities, and quickly became a leading product in this field.  CODE V®'s uses are widespread:  organizations like NASA use CODE V® in connection with telescopy, and it also has substantial clients in the automotive, medical, industrial, and aerospace industries, across both government and commercial sectors.

33.    Synopsys also acquired ORA's LightTools® software product, which is a 3D tool focused on how best to manipulate and control light.  LightTools® simulates how light will be perceived in real-world environments so that engineers can design products such as automotive headlights, street lights and cell phone displays that have the desired brightness, distribution and uniformity of light.

34.    Synopsys' purchase of ORA was widely reported in numerous publications, including optics and photonics industry publications such as SPIE (the international society for optics and photonics), LASERFOCUS World, LEDs Magazine, optics.org, and Photonics spectra.  *See*, *e.g.*, Exs. 2–12.

35.    Since acquiring ORA, Synopsys has continued to develop and market CODE V® and LightTools®, as well as other products with additional solutions for customers in the optical and

- 8 -

photonic design industry, including but not limited to ImSym™, a simulation platform; LucidShape™, for designing exterior automotive lighting systems; RSoft™ Photonic Device Tools, a suite of simulators and optimizers for nanoscale devices and metaoptics; optical scattering measurement hardware and services; and optical engineering services and consulting.

36.    Each of these goods and services have been continuously marketed by Synopsys as originating from Synopsys, including by application of Synopsys' registered and incontestable SYNOPSYS® mark.  In so doing, Synopsys has carried forward the consumer recognition, renown, and goodwill it achieved in the EDA sector to its other business pursuits, including optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services. Thus, Synopsys' use of the SYNOPSYS® marks in connection with its optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services has consistently distinguished Synopsys' optical and photonic business from other competitors, and has become well-known and instantly recognizable by consumers.

37.    By using its registered SYNOPSYS® marks in commerce in connection with its goods and services, Synopsys has solidified its position as a leading provider of optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services in the United States.

**B.    OSD's Goods and Services**

38.    Upon information and belief, OSD began operations in or around 1976.  OSD calls its lens design product SYNOPSYS, which stands for "SYNthesis of OPtical SYStems."  OSD was founded by, and its SYNOPSYS software was developed by, Don Dilworth, the sole proprietor and employee of OSD until he sold the company in 2019.

39.    Upon information and belief, at least until the time Mr. Dilworth sold OSD, it was effectively a one-man operation that had conducted essentially no marketing or advertising for more than a decade.  As a result, it realized only limited sales and was a niche player in the market.  As of 2018, OSD had approximately 50 active customers for its software products, which brought in less than $100,000 per year.  At least until Mr. Dilworth sold OSD, its consulting business was more

lucrative than its sale and licensing of software. Upon information and belief, OSD remains a small player in the optical lens design software market to this day, with less than a 1% market share.

40.    At no point between 1976 and 2024 did OSD seek trademark protection for the "SYNOPSYS" name it uses for its optical lens design software product.

41.    However, on March 15, 2024, almost five years after Mr. Dilworth sold OSD to Ms. Cheong and nearly 50 years after OSD first began offering its optical lens design software product under the SYNOPSYS name, OSD filed a trademark application, No. 98451705, to register that mark in a number of different classes, including international class 9 and U.S. class 38, in which Synopsys has obtained incontestable status for its own registered SYNOPSYS® mark. Exs. 15–16.

42.    On October 31, 2024, OSD filed for an extension of time to file an Opposition to Synopsys' pending trademark application No. 97904314, for SYNOPSYS, in international classes 9, 41, and 42, U.S. classes 21, 23, 26, 36, 38, 100, 101 and 107; the extension was granted. Exs. 17–18.

### C.    OSD's Acquiescence and Inaction to Synopsys' Use of its Marks

43.    OSD, including through its prior owner and sole employee Mr. Dilworth, has had at least constructive knowledge of Synopsys' use of the SYNOPYS® mark since it registered that trademark in 1990, and has had actual knowledge of Synopsys' presence in the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services market and its use of the SYNOPYS® mark in connection with the provision of optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services, since Synopsys' acquisition of ORA in 2010. In particular, given ORA's prominence in the same field as OSD's software (ORA's software was focused on optical lens design), OSD has known since 2010 that Synopsys had purchased ORA, which was widely publicized, and thus was also in the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services market. Before Synopsys, Inc. acquired ORA, OSD was very familiar with ORA and the CODE V® product because OSD tried to compete with ORA and CODE V®. *See, e.g.*, Ex. 33.

44.    Additionally, on information and belief, shortly after Synopsys purchased ORA, Mr. Dilworth informed a Synopsys executive that Synopsys' ORA acquisition was the best thing that

had ever happened to OSD, because news of that transaction drove traffic to OSD's website and OSD had not previously spent any resources on marketing or advertising its own products.

45.    OSD's actual knowledge of Synopsys' use of the Synopsys® mark in connection with the provision of optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services is also evidenced by updates OSD made to its website following Synopsys' acquisition of ORA.  In particular, by September 4, 2011, OSD's website described its software as "The *real* SYNOPSYS," plainly an effort to distinguish its offerings from Synopsys' products.  *See* Ex. 19.  And by May 21, 2013, OSD's website also directly compared its own software product to Synopsys' Code V® product, including through a presentation describing "the major differences between SYNOPSYS and CODE V."  Exs. 20–21.  This 2013 OSD presentation recognizes that "Code-V™ is a trademark of SYNOPSYS, Inc."  *Id.*  It also demonstrates that OSD was familiar with Synopsys' literature for Code V at least as early as May of 2013 because it argues: "[t]he Code-V online manual is less convenient" than OSD's manual for its own competing products.  *Id.*  Starting in late 2010 and early 2011, Synopsys branded all new CODE V® product literature with its SYNOPSYS® trademark.  OSD's familiarity with the Code V manual demonstrates that it had actual knowledge, by no later than 2013, of Synopsys' use of its SYNOPSYS® trademark in connection with Code V.  Exs. 38–42, 45.  Moreover, OSD has maintained on its website for a number of years the following disclaimer:  "OSD is NOT a reseller of CODE V, published by Synopsys, Inc.; nor do we have any relationship with Synopsys, Inc."  Exs. 22–23.

46.    Others in the market have also actively distinguished between Synopsys' offerings and OSD's Synopsys product.  For instance, in conjunction with the International Optical Design Conference 2014, Richard C. Juergens of Raytheon Missile Systems published an article titled "The 2014 IODC lens design problem: The Cinderella lens."  Ex. 24.  That article discussed both Synopsys' CODE V® product and OSD's product, and noted that OSD's software "is not associated in any way with the company Synopsys, Inc."  *Id.*

47.    Moreover, in the years that followed Synopsys' acquisition of ORA, OSD repeatedly reached out to Synopsys to discuss a possible business partnership or acquisition of OSD by Synopsys, because both companies sold lens design products.

48.    In or around 2016, Mr. Dilworth met with Synopsys personnel in San Diego to explore the possibility of a collaboration between OSD and Synopsys.  As he wrote:  "you have a good company, good marketing, and a good customer base," and "[t]here should be a way to bundle SYNOPSYS with Code-V to make it easy for the user to switch back and forth.  That combination would be unbeatable, and we both win."  Ex. 25.  Mr. Dilworth revived those discussions in July 2017, again meeting and emailing with Synopsys employees in Pasadena, CA.  *Id.*

49.    The next month, in August 2017, Mr. Dilworth offered Synopsys employees in Pasadena, CA a "merger proposal" by email, under which Synopsys would assume responsibility for development and marketing of OSD's software business.  Ex. 26.  These negotiations resumed in April 2018, when Mr. Dilworth began exploring the sale of OSD's software business, including its trademarks, to Synopsys.  Upon information and belief, Mr. Dilworth sought to retire, and intended to sell OSD in order to do so.

50.    In furtherance of that potential transaction, OSD and Synopsys corresponded extensively and held a full-day in-person meeting on April 24, 2018 at Synopsys' Pasadena, California offices.  They also held another technical meeting at Mr. Dilworth's home in Maine.  Synopsys ultimately offered less than $500,000 to purchase OSD's software business, including its trademarks.

51.    During the course of negotiations, it became clear that Mr. Dilworth had received a higher offer from another prospective purchaser, and intended to sell to that entity.  At that time, Synopsys offered to purchase OSD's common-law trademark for almost half the amount it offered Mr. Dilworth to purchase all of OSD, with a release that would allow the purchaser of OSD to continue to use the trademark for one year after acquisition.  Although both Mr. Dilworth and the prospective buyer indicated interest in the deal, especially after Synopsys confirmed that it had no plans to market any individual product under the name "Synopsys," the deal was never concluded.  Exs. 27–29.

52.    In or around early 2019, Synopsys learned that Mr. Dilworth had sold OSD to Ms. Kit Cheong.  Upon information and belief, Ms. Cheong paid less than $1.5 million for OSD's entire software business, including all associated intellectual property.

53.    In February 2019, after the sale of OSD was completed, Synopsys contacted Ms. Cheong to discuss purchasing OSD's common law SYNOPSYS trademark for optical lens design software.  Ms. Cheong indicated that she was busy and asked Synopsys to revisit those discussions later.  Ex. 30.

54.    A year later, without any further response from Ms. Cheong, Synopsys again reached out to discuss purchasing the trademark.  Ms. Cheong again indicated that she was "open to a discussion of the terms and conditions for the possible transfer of this trademark."  Ex. 31.

55.    In that same communication, Ms. Cheong identified what she termed a "plausible breach" in September 2019.  While at an event at the University of Arizona, someone from OSD allegedly "saw an announcement for a CodeV event posted next to the elevator door," in which "the word 'SYNOPSYS' appeared all in upper case, matching our trademark…."  *Id.*  Upon investigation, Synopsys learned that announcement was not created by Synopsys; rather, upon information and belief, it was created by a student group at the University of Arizona.  Since late 2010, Synopsys has continuously used its registered SYNOPSYS® mark in connection with the sale of CODE V®, other optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services, as well as other products and services.  *See*, *e.g.,* Exs. 38–42, 45.  Since October of 2010, OSD has had actual knowledge of Synopsys' use of the SYNOPSYS® logo in connection with the marketing and sale of CODE V®.  *See, e.g.,* Exs. 20–21.

56.    Despite OSD's constructive knowledge of Synopsys' use of the SYNOPSYS® mark in commerce, and its knowledge since 2010 that Synopsys has used the SYNOPSYS® mark in commerce in connection with the sale of optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services, at no point during any of the foregoing events, including after the "plausible breach" identified by Ms. Cheong in September 2019, did it bring or threaten to bring any action to enforce its common-law mark, nor did it ever ask Synopsys to cease or desist any marketing or branding efforts.  Instead, OSD repeatedly indicated that it sought

to collaborate with Synopsys, or to sell all or part of its own software business (including its unregistered trademarks) to Synopsys.

57.   Relying on over a decade of the parties' peaceful coexistence and OSD's indifference, inaction and acquiescence, Synopsys invested substantial resources into the marketing and sales of all of its products and services, including optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services, including by extending its famous and incontestable SYNOPSYS® mark to the sale of products and services in various industry segments. Since its acquisition of ORA, Synopsys has attained significant recognition, goodwill, and renown in the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services industry segment.

**D.   In 2024, OSD First Surfaces Allegations of Trademark Infringement**

58.   On June 20, 2024, OSD, through its attorneys, sent a letter to Synopsys' headquarters in California, alleging for the first time that Synopsys had engaged in the unauthorized use of OSD's unregistered SYNOPSYS trademark.  Ex. 32.  OSD identified only a single supposed instance of confusion between Synopsys' offerings and OSD, which did not occur in the United States but instead allegedly occurred "at a trade show in Quebec City, Canada in June of 2023."  *Id.*

59.   Synopsys provided its response a month later, on July 19, 2024. Ex. 33.  As Synopsys explained, it—not OSD—was the owner of the incontestable SYNOPSYS® mark; OSD had never opposed or challenged Synopsys' use and registration of that mark, and OSD's longstanding knowledge of Synopsys and its explicit acquiescence to Synopsys' use in connection with optical design software foreclosed any claim against Synopsys.  *Id.*  Synopsys noted that the two companies had peaceably coexisted for nearly 40 years, and that OSD's decade-long delay and acquiescence after Synopsys entered the optical design industry gives rise to laches as a matter of law.

60.   Undeterred, OSD continued to harass Synopsys, sending letters in August, October, and November 2024, first demanding an 8-figure cash payment—upon information and belief, dozens of times more than Ms. Cheong had paid for OSD in 2019—and then demanding that Synopsys cease all use of the SYNOPSYS® mark, withdraw all products, services, and materials bearing the mark from use in commerce, and destroy all materials that contain the mark.  *See* Exs.

43-44, 37.  OSD further threatened litigation, in which it promised to seek injunctive relief barring Synopsys from using its own famous brand name in connection with EDA and IP goods and services it has offered for nearly 40 years, as well as the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services it has sold for more than a decade.  *Id.*

61.    OSD had actual knowledge of Synopsys' use of its famous brand name in selling optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services, and it accepted, approved of and acquiesced to the same for a decade before objecting. Moreover, between 2016 and 2024, OSD actively induced Synopsys to rely on its acquiescence by engaging in an eight-years-long, on-again, off-again negotiation to sell OSD and its common law trademark to Synopsys.  Although OSD sold its business to a higher bidder in 2019, OSD's new owner continued to express potential interest in selling the trademark to Synopsys before suddenly changing course with its June 20, 2024 letter.

62.    OSD's bad-faith assertion of its unregistered trademark, its threatened lawsuit against Synopsys, and its actions before the USPTO give rise to the following causes of action.

### COUNT I:  DECLARATORY JUDGMENT OF LACHES

63.    Synopsys repeats and realleges all of the allegations in the above paragraphs as though fully set forth herein.

64.    Any claims of trademark infringement made by OSD are barred by laches.

65.    Synopsys has been a leading provider of software in the technology industry since 1986.  In October 2010, Synopsys purchased ORA, an optical design software company whose products included Code V® and LightTools®, optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software products.

66.    Upon information and belief, OSD has had actual and/or constructive knowledge of Synopsys' use of the SYNOPSYS® mark since at least the registrations of U.S. Trademark Nos. 1601521 and 1618482—June 12, 1990 and October 23, 1990, respectively—and which both became incontestable in August 1996.

67.    Upon information and belief, OSD also has had actual and/or constructive notice that Synopsys has used the SYNOPSYS® mark continuously in connection with the sale of design

software since Synopsys launched in 1986, and/or through Synopsys' registration and maintenance of the www.synopsys.com website since 1994.

68.    Upon information and belief, OSD had actual and/or constructive knowledge of Synopsys' acquisition of ORA and presence in the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services industry since October 2010, because that purchase was widely reported in the industry through various news channels and press releases, including those specifically directed at the optical and photonic industry.

69.    OSD was aware of Synopsys' purchase of ORA and presence in the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services industry by 2010 because, upon information and belief, shortly after the acquisition, OSD's prior owner Mr. Dilworth informed a Synopsys executive that it was the best thing that had ever happened to OSD's business.

70.    Thus, since 2010, OSD has been aware of the facts and circumstances giving rise to its threatened trademark infringement lawsuit:  that Synopsys was using its SYNOPSYS® mark in connection with the provision of design software and services, including in the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services industry.

71.    OSD's knowledge of these facts and circumstances is confirmed by its website, which by May 21, 2013 not only described its own software as "The *real* SYNOPSYS," thereby distinguishing its offerings from Synopsys' offerings, but also  referenced Code V and described "the major differences between SYNOPSYS and CODE V."  Exs. 19–21.

72.    Additionally, since at least 2014, others in the optical industry have noted that OSD is not affiliated with Synopsys, Inc., including in an article published in conjunction with the International Optical Design Conference 2014.  Ex. 24.

73.    Additionally, throughout 2016, 2017 and 2018, OSD was aware that Synopsys was using its SYNOPSYS® mark in commerce in connection with optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services because its then-owner, Mr. Dilworth, reached to Synopsys to propose a collaboration between OSD and Synopsys, and/or

a possible sale of OSD's software business and associated intellectual property to Synopsys. Mr. Dilworth also specifically expressed an interest in selling OSD's common-law trademark to Synopsys.

74. In 2019 and 2020, after Mr. Dilworth sold OSD to Ms. Cheong, Synopsys again contacted OSD to discuss a possible purchase of OSD's unregistered trademark to facilitate administrative proceedings. At this time, too, OSD was aware that Synopsys was using its SYNOPSYS® mark to provide goods and services within the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services industry.

75. OSD was also aware, no later than September 2019, of a "plausible breach" associated with a "CodeV event" in which "the word 'SYNOPSYS' appeared all in upper case." Yet, OSD still expressed an interest in transferring its common-law trademark to Synopsys, did not object to Synopsys' continued use of the mark, and did not threaten or bring a trademark infringement action against Synopsys.

76. Despite nearly 40 years of coexistence, including more than a decade of coexistence in the optical design software and services market, at no point prior to June 2024 did OSD did ever threaten or bring litigation based on Synopsys' use of its SYNOPSYS® mark in connection with the sale of goods or services, including optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services.

77. As a result of OSD's inaction, Synopsys has continued to invest substantial resources in further developing, as well as marketing and branding, its optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services, including CODE V® and other optical and photonics products. As a result of that investment, Synopsys has achieved substantial brand recognition and goodwill for use of its SYNOPSYS® mark in this industry, extending what was already a famous and world-renowned mark into the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services industry.

78. Because of the over a decade delay between OSD's first knowledge of Synopsys' use of the SYNOPSYS® mark in connection with optical and photonic design, analysis, prototyping,

optimizing, rendering, and simulation software and services, a strong presumption of laches applies to bar OSD's threatened infringement claims.

79.     OSD's delay was unreasonable and is not excusable.   OSD was fully aware of Synopsys' use of the Synopsys® mark and yet decided to take no action for more than 14 years.

80.     OSD's delay induced the belief in Synopsys that OSD had forgone any claim against Synopsys arising from its use of the SYNOPSYS® mark in commerce, including in connection with the sale of goods and services in the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services industry, and that OSD had decided instead to forego any real investment in its own branding and marketing and take advantage as much as possible from any misdirected web traffic looking for Synopsys' products.

81.     Synopsys' SYNOPSYS® mark is a fanciful and strong mark.  It has used the mark in connection with software products since 1986, and has achieved global success and recognition. Moreover, Synopsys' registrations have obtained incontestable status before the USPTO.

82.     OSD did not act with diligence in enforcing its unregistered mark.

83.     OSD did not act to enforce its mark after Synopsys applied for trademarks for the mark SYNOPSYS® in connection with the sale of software on March 30, 1989 and registered those trademarks in 1990.  Nor did OSD act to enforce its mark in the following years despite the fact that Synopsys has consistently and continuously branded its software, user manuals and promotional materials with the SYNOPSYS® mark.  OSD also did not act to enforce its mark after Synopsys registered the www.synopsys.com domain and began using that website continuously, starting in 1994.

84.     OSD also did not act to enforce its mark once Synopsys purchased ORA and began to sell ORA's optical and photonics software.  To the contrary, OSD actively explored a business relationship with Synopsys, never once raising any concerns about its use of the SYNOPSYS® mark in connection with the sale of goods or services, including in connection with the sale of optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services.

85.    Instead, it was Synopsys that contacted OSD about potentially purchasing OSD's unregistered mark.  When those negotiations fell through, OSD never threatened or pursued any enforcement action until sending a cease and desist years later in 2024 that threatened litigation.

86.    No harm will accrue to OSD if Synopsys is permitted to continue using its SYNOPSYS® mark.  The two companies have peacefully coexisted for decades, and OSD has invested little to no resources in developing its own branding and recognition.

87.    When launching its company in 1986, and when expanding its optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services business in 2010, Synopsys did not seek to free-ride on OSD's goodwill because OSD had not achieved any recognition associated with its use of the mark.  Additionally, Synopsys' use of the SYNOPSYS® mark was open and notorious.  Thus, Synopsys has continuously used the mark in good faith across all of its lines of business.

88.    Although both Synopsys and OSD sell optical design software, there is little direct competition between the two.  Synopsys is a global corporation and its software, including CODE V®, holds a large portion of the market, while OSD is a niche player with a small number of customers.  The two companies sell their goods and services through different channels, to different customers, at different price points.

89.    Synopsys would be significantly prejudiced if forced to abandon the branding into which it has invested decades of resources.  Since its founding in 1986, Synopsys has grown to be a leading software company, with over 20,000 employees across dozens of offices around the globe.  Synopsys is publicly traded on the NASDAQ exchange and is part of the S&P 500.  As a result, its name and its use of the SYNOPSYS® mark are famous worldwide.  Although Synopsys' largest business is the sale of EDA and IP tools and services, Synopsys also develops and markets goods and services for a number of other applications, including artificial intelligence and machine learning; cloud services; data analytics; design; image processing; modeling and simulation; and manufacturing.

90.    Over the past fourteen years, Synopsys has built a valuable business in the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services

AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

space, building on the existing recognition and goodwill that ORA had developed, through use of the world-renowned SYNOPSYS® mark.  Over that time, Synopsys has continued to expand its business, not only offering several new generations and versions of the CODE V® and LightTools® products that it acquired from ORA, but also supplementing them with Synopsys ImSym™; Synopsys LucidShape™; Synopsys RSoft™ Photonic Device Tools; optical scattering measurement hardware and services; and optical engineering services and consulting.

91.    Accordingly, the doctrine of laches bars any claim to relief for OSD.

### COUNT II:  DECLARATORY JUDGMENT OF EQUITABLE ESTOPPEL

92.    Synopsys repeats and realleges all of the allegations in the above paragraphs as though fully set forth herein.

93.    OSD's actions since its constructive or actual notice of Synopsys' use of the SYNOPSYS® trademark, including its repeated attempts to enter into a business collaboration or transaction with Synopsys and its failure to ever bring action against or accuse Synopsys of infringing on OSD's common-law trademark until 2024, led Synopsys to reasonably believe that OSD did not intend to enforce any trademark rights against Synopsys.

94.    Synopsys did not know and had no way of knowing that OSD objected to the sale of products marked with the SYNOPSYS® trademark.

95.    OSD affirmatively represented that Synopsys' entry into the optical and photonics space was a positive for OSD.  Even after it entertained selling its business and common-law trademark to Synopsys, and referenced Synopsys and its CODE V® product in publications and its own website, OSD did not accuse Synopsys of trademark infringement until 2024.

96.    Due to its reliance on OSD's actions, Synopsys will be materially prejudiced if OSD is allowed to proceed with its threatened claim of trademark infringement, for the reasons described above, including the significant investments Synopsys has made in the Synopsys® mark and products branded with that mark.

97.    Accordingly, the doctrine of equitable estoppel bars any claim to relief for OSD.

AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

**COUNT III: DECLARATORY JUDGMENT OF NO TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT OR COMMON LAW, AND NO UNFAIR COMPETITION FROM USE OF THE SYNOPSYS® MARK**

98.    Synopsys repeats and realleges all of the allegations in the above paragraphs as though fully set forth herein.

99.    There is no likelihood of confusion and no false association resulting from the coexistence of Synopsys' and OSD's marks, including in the optical and photonic design, analysis, prototyping, optimizing, rendering, and simulation software and services industry.

100.    OSD has not developed exclusive trademark rights in its unregistered SYNOPSYS™ mark.  OSD failed to market or advertise its software products for decades, and has made only a small number of sales to a limited number of customers.  By contrast, Synopsys' SYNOPSYS® mark is famous and well-recognized, due to decades of continuous investment by Synopsys.

101.    Additionally, customers in the market for optical design software are large, sophisticated entities, including academic and research institutions and corporations.  They are well-qualified and capable of distinguishing between Synopsys' software, including but not limited to CODE V®, and OSD's own offerings.

102.    There is also no likelihood of confusion between Synopsys' and OSD's offerings because both companies sell their software directly at high prices of thousands of dollars per license.  Upon information and belief, Synopsys offers CODE V® at a higher price point than OSD's product and in accordance with a different type of licensing model as compared with OSD's terms for use of its product.  Customers in the market for optical design software are very careful in their buying decisions, including because products from different vendors have different user interfaces and features, and even trained engineers need to spend considerable time to learn how to use a new interface.  Additionally, optical lens design software like that sold by Synopsys and OSD is not an "off-the-shelf" product, and customers develop strong relationships with vendors through set-up and configuration of tailored solutions.  Accordingly, no prospective purchaser would confuse Synopsys' offerings for OSD's or vice versa.

103.   OSD has not established any actions by Synopsys likely to cause confusion among relevant consumers.  At most, it has pointed to a single trade show outside of the United States, in Quebec City, Canada, at which Synopsys customers purportedly mistakenly approached OSD's booth.  Such extraterritorial conduct is outside the reach of the Lanham Act and common law.

104.   To the extent there has been any alleged confusion, Mr. Dilworth confirmed that Synopsys' entry into this industry was the best thing that had ever happened to OSD, by driving traffic to an otherwise minimal market participant with little to no advertising efforts of its own.

105.   Synopsys' use of its registered SYNOPSYS® mark, both since its founding in 1986 and since its acquisition of ORA in 2010, does not constitute wrongful or deceptive conduct. Synopsys began its use of the mark in good faith and without knowledge of OSD's offerings, and has not sought to benefit, nor has it benefitted, from any goodwill attained by OSD.  Synopsys has not passed off its offerings in a way that hides their true origin, nor has it falsely or misleadingly marketed, advertised, or sold its products.

106.   Accordingly, Synopsys is entitled to declaratory judgment that it does not infringe any common-law trademark rights held by OSD, either under the Lanham Act or common law, and that its own use of its registered SYNOPSYS® mark does not constitute unfair competition.

AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

**PRAYER FOR RELIEF**

WHEREFORE, Synopsys requests that the Court:

    1.  Enter judgment according to the declaratory relief sought;

    2.  Award Synopsys its attorneys' fees and costs in this action; and

    3.  Enter such other further relief to which Synopsys may be entitled as a matter of law or equity.

**DEMAND FOR JURY TRIAL**

Synopsys hereby demands a trial by jury on all issues so triable raised by the Complaint.

Dated:  June 3, 2025

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By:   */s/ Krista S. Schwartz*
      Krista S. Schwartz

Attorney for Plaintiff
SYNOPSYS, INC.

- 23 -
AMENDED COMPLAINT FOR DECLARATORY JUDGMENT