**WILLKIE FARR & GALLAGHER LLP**
Krista S. Schwartz (Bar No. 303604)
  kschwartz@willkie.com
Barrington Dyer (Bar No. 264762)
  bdyer@willkie.com
Ann N. Hopkins (Bar No. 325474)
  ahopkins@willkie.com
Jacob Karim (Bar No. 340376)
  jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

**WILLKIE FARR & GALLAGHER LLP**
Aliza George Carrano (*Pro Hac Vice* pending)
  acarrano@willkie.com
Dane Sowers (*Pro Hac Vice* pending)
  dsowers@willkie.com
1875 K Street, N.W.
Washington, DC  20006
Telephone: (202) 303-1000

**WILLKIE FARR & GALLAGHER LLP**
Devon W. Edwards (*Pro Hac Vice* pending)
  dedwards@willkie.com
787 Seventh Ave.
New York, NY 10019
Telephone: (212) 728-8000

Attorneys for Plaintiff
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>OPTICAL SYSTEMS DESIGN LLC,<br><br>Defendant. | Case No. 2:24-cv-10515-DSF-JC<br><br>Judge:    Hon. Dale S. Fischer<br>Ctrm:    7D<br><br>DATE:  September 8, 2025<br>TIME:  1:30 p.m. |
| OPTICAL SYSTEMS DESIGN LLC,<br><br>Counter-Claimant,<br><br>v.<br><br>SYNOPSYS, INC.,<br><br>Counter-Defendant. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

1

# <u>TABLE OF CONTENTS</u>

2

**Page**

3    I.    INTRODUCTION..............................................................................1

4    II.   BACKGROUND................................................................................2

5    III.  LEGAL STANDARD.........................................................................5

6    IV.   ARGUMENT ....................................................................................5

7         A.    All of OSD's Counterclaims Are Untimely....................................5

8              1.    Counterclaims 2 and 3 Are Time-Barred by the Applicable
                     Statutes of Limitations ........................................................6

9
              2.    Counterclaim 1 Is Barred by Laches (Count I)........................7

10
                   a.    OSD's Claims Are Untimely Under Analogous State

11                       Law........................................................................8

12                 b.    OSD Unreasonably Delayed Filing Suit.....................9

13        B.    In the Alternative, Judgment Should Be Granted on Three Aspects of
               OSD's Answer and Counterclaims...............................................14

14
              1.    Counterclaim 1 Does Not State a Claim for False Designation

15                   of Origin .........................................................................15

16                 a.    OSD Did Not Plead Counterclaim 1 with Particularity  15

17                 b.    Synopsys Has Not Used a False Designation..............17

18            2.    OSD's Request for Declaratory Relief Is Improper .............19

19            3.    Unclean Hands Defense Is Not Supported by the Pleadings...20

20   V.    CONCLUSION................................................................................21

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Carrion v. United Student Aid Funds, Inc.*,
No. 15-cv-829, 2015 WL 13914997 (C.D. Cal. Aug. 18, 2015)..................... 7

*City of Leavenworth v. Projekt Bayern Association*,
No. 22-cv-174, 2022 WL 4546550 (E.D. Wash. Sept. 28, 2022)................... 18

*City-Core Hospitality, LLC v. Palmer*,
No. 17-cv-05544, 2018 WL 398257 (N.D. Cal. Jan. 12, 2018)..................... 18

*Coach, Inc. v. Citi Trends, Inc.*,
No. 17-cv-4775, 2019 WL 13146765 (C.D. Cal. Dec. 23, 2019)................... 19

*E-Sys., Inc. v. Monitek, Inc.*,
720 F.2d 604 (9th Cir. 1983) ............................................................... 9

*Fine v. Kansas City Life Ins. Co.*,
627 F. Supp. 3d 1153 (C.D. Cal. 2022) .................................................. 20

*Fitbug Ltd. v. Fitbit, Inc.*,
78 F. Supp. 3d 1180 (N.D. Cal. 2015).................................................6, 10

*Free Kick Master LLC v. Apple Inc.*,
No. 15-cv-3403, 2016 WL 777916 (N.D. Cal. Feb. 29, 2016) ....................... 6

*Gamez v. Summit Nats. Inc.*,
No. 22-cv-5894, 2022 WL 17886027 (C.D. Cal. Oct. 24, 2022) .................... 5

*Grupo Gigante S.A. de C.V. v. Dallo & Co.*,
119 F. Supp. 2d 1083 (C.D. Cal. 2000) ................................................. 11

*Grupo Gigante SA De CV v. Dallo & Co.*,
391 F.3d 1088 (9th Cir. 2004)........................................................*passim*

*Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*,
668 F. Supp. 3d 1025 (C.D. Cal. 2023) .........................................11, 13, 14

*Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*,
No. 23-55774, 2024 WL 4750497 (9th Cir. Nov. 12, 2024) ................... 7, 8, 9

*Isaacs v. USC Keck Sch. of Med.*,
853 F. App'x 114 (9th Cir. 2021)......................................................... 7

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
304 F.3d 829 (9th Cir. 2002) .......................................................8, 20, 21

*Jenny Yoo Collection, Inc. v. Essence of Australia, Inc.*,
No. 17-cv-2666, 2018 WL 3744060 (D. Kan. Aug. 7, 2018) ....................... 7

*Julian Bakery, Inc. v. Healthsource Int'l, Inc.*,
   No. 16-cv-2594, 2018 WL 1524499 (S.D. Cal. Mar. 28, 2018) ............... 15, 16

*Los Molinos Mut. Water Co. v. Ekdahl*,
   695 F. Supp. 3d 1174 (E.D. Cal. 2023) ..................................................... 19

*Meza v. FCA US LLC*,
   No. 22-cv-4011, 2022 WL 14769145 (C.D. Cal. Oct. 24, 2022) ..................... 5

*Move Press, LLC v. Peloton Interactive, Inc.*,
   18-cv-1686, 2019 WL 4570018 (C.D. Cal. Sept. 5, 2019). .......................... 9

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
   894 F.3d 1015 (9th Cir. 2018) ................................................. 8, 9, 13, 14

*R & A Synergy LLC v. Spanx, Inc.*,
   No. 17-cv-9147, 2019 WL 4390564 (C.D. Cal. May 1, 2019) ................ 17, 19

*Ramirez v. Navarro*,
   No. 23-55112, 2024 WL 1874993 (9th Cir. Apr. 30, 2024) ......................... 12

*Roseville Fullerton Burton Holdings, LLC v. Socal Wheels, Inc.*,
   No. 14-cv-1954, 2016 WL 11750383 (C.D. Cal. Oct. 11, 2016) ......... 12, 13, 14

*San Diego Comic Convention v. Dan Farr Prods.*,
   No. 14-cv-1865, 2018 WL 4078588 (S.D. Cal. Aug. 23, 2018) .................... 17

*SEC v. Payward, Inc.*,
   763 F. Supp. 3d 901 (N.D. Cal. 2025) ..................................................... 20

*Sparrow Inc. v. Lora*,
   No. 14-cv-1188, 2014 WL 12561587 (C.D. Cal. Aug. 5, 2014) .............. 15, 17

*Tanasescu v. Kremer*,
   No. 17-cv-1513, 2019 WL 1091338 (C.D. Cal. Jan. 16, 2019) ...................... 7

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
   465 F.3d 1102 (9th Cir. 2006) .......................................................... 8, 9, 12

*Valentino S.p.A. v. Mario Valentino S.p.A.*,
   No. 19-cv-6306, 2021 WL 6882327 (C.D. Cal. Apr. 9, 2021) ..................... 21

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................. 16

*Worx4u2, Inc. v. Earthwhile Endeavors, Inc.*,
   No. 20-cv-11455, 2022 WL 1601399 (C.D. Cal. Apr. 5, 2022) .............. 11, 14

*Zamfir v. Casperlabs, LLC*,
   528 F. Supp. 3d 1136 (S.D. Cal. 2021) ............................................... 17, 18

**Statutes**

15 U.S.C. §§1116–17 ................................................................................ 19

15 U.S.C. §1125(a) ...................................................................15, 16, 17

28 U.S.C. §2201(a) ............................................................................ 19

Cal. Bus. & Prof. Code §17200.......................................................... 1, 6, 7

Cal. Bus. & Prof. Code §17208.............................................................. 6

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ...............................................15, 16, 17

Federal Rule of Civil Procedure 12(b)(6)................................................. 5

Federal Rule of Civil Procedure 12(c)....................................................5, 20

## I.    INTRODUCTION

For well over a decade, Defendant Optical Systems Design LLC ("OSD") and Plaintiff Synopsys, Inc. ("Synopsys") peacefully coexisted in the market for optical design software products and services. But in 2024, OSD changed course, demanding that Synopsys cease all use of its SYNOPSYS® mark, even uses unrelated to optical design. Synopsys brought this action to confirm its entitlement to the full scope of its trademark rights. Synopsys does not infringe OSD's unregistered mark—but even if it did, OSD's unreasonable delay in bringing its counterclaims bars any relief.

Critically, in its Answer and Counterclaims, OSD confirmed that case-dispositive facts surrounding the parties' coexistence are undisputed. By OSD's own admission: (1) Synopsys was openly using its SYNOPSYS® mark in connection with optical design software starting in 2010 (ECF 42, Counterclaims ¶¶18, 22); (2) OSD knew about Synopsys' use and distinguished its offerings as "*the real* SYNOPSYS" by 2011 (*id.*, Answer ¶1); (3) OSD's founder told Synopsys its company name was "confusingly similar" to OSD's unregistered trademark in June 2018 (ECF 40 ("FAC"), Ex. 29; ECF 42, Answer ¶1); and (4) OSD wrote to Synopsys about a "plausible breach" of its unregistered trademark rights in September 2019 (FAC, Ex. 31 at 1; ECF 42, Answer ¶1). On these facts, OSD has no valid cause of action against Synopsys. Judgment on OSD's counterclaims—and Synopsys' laches claim ("Count I")—should be granted for Synopsys.

OSD's responsive pleading brought three counterclaims against Synopsys: (1) false designation of origin under the Lanham Act ("Counterclaim 1") (ECF 42, Counterclaims ¶¶29–34); (2) common law trademark infringement and unfair competition ("Counterclaim 2") (*id.* ¶¶35–42); and (3) unfair competition under California Business and Professions Code §17200 ("Counterclaim 3") (*id.* ¶¶43–49). The pleadings, on their face, confirm that OSD's counterclaims are barred either

by laches (Counterclaim 1 and Count I) or the statute of limitations (Counterclaims 2–3).[1]  Granting judgment to Synopsys on these issues entirely resolves this action.

In the alternative, judgment should be granted on three aspects of OSD's Answer and Counterclaims that are deficient as a matter of law.  **First**, Counterclaim 1 for false designation of origin necessarily fails because (1) OSD failed to plead its claim with particularity as required by Federal Rule of Civil Procedure 9(b), and (2) there was nothing false about Synopsys identifying itself as the originator of its own optical design software.  **Second**, because OSD did not bring a declaratory judgment claim, the Court cannot grant OSD's "Prayer for Relief" seeking a declaration "[t]hat OSD owns valid and subsisting trademark rights in its SYNOPSYS™ mark in the optical design software space that are superior to any trademark rights Synopsys claims in that space." (ECF 42 at 16.)  And **third**, judgment for Synopsys is warranted as to OSD's affirmative defense of unclean hands because OSD failed to allege that Synopsys acted with fraudulent intent in obtaining any trademark rights.  Should any of OSD's counterclaims survive this motion, these aspects of OSD's counterclaims should be resolved at the pleading stage.

## II.    BACKGROUND

This motion rests on the following undisputed facts.

Synopsys is a global leader in the software industry.  (FAC ¶1; ECF 42, Counterclaims ¶14.)  Shortly after its founding in 1986,[2] Synopsys registered its corporate name as its now-incontestable SYNOPSYS® trademark.  (FAC ¶2; ECF 42, Counterclaims ¶14.)  Since obtaining its first trademark registration in 1989,

---

[1]  Synopsys' Complaint seeks declaratory judgment of laches, and its Answer to OSD's Counterclaims pleads statute of limitations as an affirmative defense.  (FAC ¶¶63–91; ECF 48 at 11.)

[2]  OSD incorrectly alleges that Synopsys was founded in 1987.  *See* ECF 42, Counterclaims ¶9.  That discrepancy is not material for purposes of this motion.

1    Synopsys repeatedly extended the SYNOPSYS® mark with subsequent registrations.

2    (ECF 42, Counterclaims ¶14 (listing six registrations).)  To this day, Synopsys uses

3    the mark SYNOPSYS® in connection with a wide variety of products including, as

4    relevant to this case, optical design products such as CODE V® and LightTools®.

5    (FAC ¶¶31–37; ECF 42, Counterclaims ¶17.)

6        In 2010, Synopsys acquired a company named Optical Research Associates

7    ("ORA") and its optical design products, including CODE V®.    (ECF 42,

8    Counterclaims ¶3.)    Synopsys began openly using its SYNOPSYS® mark in

9    connection with CODE V® and ORA's other optical design products shortly

10   thereafter.  (*Id.*, Counterclaims ¶¶18, 22–26.)  For example, starting in late 2010,

11   Synopsys "branded all new Code V® product literature with its SYNOPSYS®

12   trademark." (*Id.* ¶18.)  Similarly, Synopsys used its SYNOPSYS® mark in YouTube

13   videos promoting CODE V® by 2015.  (ECF 42, Counterclaims ¶¶24–26, Exs. 2–3.)

14       OSD was founded by Don Dilworth, who began promoting and selling an

15   optical systems design software product called SYNOPSYS™ in 1976.  (ECF 42,

16   Counterclaims ¶10.)  In 1986, Mr. Dilworth formed "Optical Systems Design, Inc."

17   and sold his SYNOPSYS™ software through this corporation until he sold his

18   business to Ms. Kit Cheong in 2019. (*Id.* ¶11; FAC, Ex. 32 at 1.)  While Mr. Dilworth

19   owned OSD and its trademark, he was plainly aware of Synopsys' use of its

20   SYNOPSYS® mark in connection with optical design software.  As OSD admits, by

21   2011 the OSD website referred to its own software product as "[t]he *real*

22   SYNOPSYS," distinguishing its offerings from those of Synopsys. (FAC ¶45; FAC,

23   Ex. 19; ECF 42, Answer ¶1.)  And in June 2018, Mr. Dilworth himself told Synopsys

24   that his "trademark is confusingly similar to [Synopsys'] company name," proposing

25   that the "solution" to any such confusion was "for [him] to agree to cease using that

26   mark" after a transition period.  (FAC, Ex. 31 at 1.)

27       Synopsys and OSD coexisted peaceably for many years, during which the two

28   companies repeatedly corresponded, including about the prospect of a partnership or

3

1   a business transaction between them.  In particular, in 2017, Synopsys and OSD began

2   negotiations for the sale of either OSD's entire business or its rights to the common-

3   law SYNOPSYS™ mark.  (ECF 42, Counterclaims ¶19; ECF 48 ¶19.)   These

4   negotiations were extensive, and included in-person meetings at (1) a San Diego trade

5   show, (2) Synopsys' offices in California, and (3) Mr. Dilworth's home in Maine.

6   (FAC ¶¶48–50; FAC, Ex. 26; ECF 42, Answer ¶1.)  Ultimately, the negotiations were

7   unsuccessful, and in 2019, OSD was purchased by Ms. Cheong.  (ECF 42, Answer

8   ¶1; FAC ¶52; FAC, Ex. 30.)

9       Shortly after Ms. Cheong acquired OSD, in September 2019, she emailed

10  Synopsys about a "plausible breach" of OSD's trademark rights based on a flyer that

11  OSD discovered during a visit to the University of Arizona.  (FAC, Ex. 31; ECF 42,

12  Answer ¶1 (admitting email's authenticity).)  Specifically, she saw that "the word

13  'SYNOPSYS' appeared all in upper case, matching our trademark."  (FAC ¶55.)

14  Although Synopsys does not agree that the flyer evidences trademark infringement,

15  Ms. Cheong's email demonstrates both (1) OSD did not view the typical use of

16  Synopsys' branding in connection with optical design software to constitute

17  trademark infringement and, important to this motion, (2) OSD was fully aware of a

18  potential cause of action by September 2019 at the absolute latest.

19      OSD, however, did not pursue the issue further until June 2024—over five

20  years after OSD's founder told Synopsys that he thought the parties' marks were

21  "confusingly similar"—when it sent a demand letter alleging that Synopsys

22  "knowingly infringed on OSD's trademark for many years."  (FAC, Ex. 32 at 1; ECF

23  42, Answer ¶1 (admitting letter's authenticity).)  OSD subsequently sent several

24  additional communications, including letters in October and November 2024,

25  demanding that Synopsys "cease and desist from any use" of Synopsys' registered

26  and incontestable SYNOPSYS® mark, even uses unrelated to optical design

27  software. (FAC ¶60, Exs. 37 and 44.)

28

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT
ON THE PLEADINGS / Case No. 2:24-cv-10515-DSF-JC

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).  Judgment on the pleadings should be granted when, "taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  *Gamez v. Summit Nats. Inc.*, No. 22-cv-5894, 2022 WL 17886027, at *2 (C.D. Cal. Oct. 24, 2022) (citation omitted).  In other words, "the standard for a Rule 12(c) judgment on the pleadings is essentially the same as for a Rule 12(b)(6) motion." *Id.*

Under that standard, "[a]llegations by the non-moving party must be accepted as true, and allegations of the moving party that have been denied must be deemed false for the purpose of the motion." *Id.*  However, in considering the facts alleged by the non-moving party, the court need not accept allegations that rest on "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* (quoting *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004)).  Furthermore, "[i]n ruling on a motion for judgment on the pleadings, courts may consider documents attached to the complaint, documents incorporated by reference into the complaint, or matters properly subject to judicial notice." *Meza v. FCA US LLC*, No. 22-cv-4011, 2022 WL 14769145, at *2 (C.D. Cal. Oct. 24, 2022).

### IV.  ARGUMENT

For the reasons set forth below, the undisputed facts set forth in the pleadings confirm that judgment for Synopsys is warranted.

#### A.  All of OSD's Counterclaims Are Untimely

Judgment on the pleadings should be granted in favor of Synopsys and against OSD, because (1) OSD's Counterclaims 2 and 3 are barred by the applicable statutes of limitations, and (2) Counterclaim 1 is barred by laches (thus also demonstrating Synopsys is entitled to judgment on Count I of the FAC).  Granting judgment for Synopsys on these two issues will resolve this action in its entirety.

### 1.    Counterclaims 2 and 3 Are Time-Barred by the Applicable Statutes of Limitations

OSD's Counterclaim 2 (for common law trademark infringement and unfair competition) and Counterclaim 3 (for unfair competition under California Business & Professions Code §17200) are both barred by the applicable statutes of limitations.

In California, courts "have almost universally assumed" that a four-year limitations period applies for trademark infringement and unfair competition claims. *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1189 (N.D. Cal. 2015) (collecting cases). However, some courts have applied a two-year limitations period on the theory that "action[s] for trademark infringement sound[] in tort." *Id.* at 1190 (quoting *Mission Imports, Inc. v. Superior Court*, 647 P.2d 1075, 1080 (Cal. 1982)). Regardless, to resolve the present motion, the Court can assume the longer four-year period applies to Counterclaim 2. *See Free Kick Master LLC v. Apple Inc.*, No. 15-cv-3403, 2016 WL 777916, at *8 (N.D. Cal. Feb. 29, 2016) (acknowledging the split and finding "the claim is time-barred under even the longest of those limitation periods"). Similarly, as to Counterclaim 3, the limitations period for a §17200 claim is four years. *Id.*; Cal. Bus. & Prof. Code §17208. Both limitations periods are calculated from "[when the] plaintiffs first discovered the alleged infringement," *Free Kick Master*, 2016 WL 777916, at *7, or in other words, when "the cause of action accrued." Cal. Bus. & Prof. Code §17208.

Here, as explained above, OSD was aware of Synopsys' allegedly infringing conduct no later than September 2019, when Ms. Cheong emailed Synopsys to inform it of a "plausible breach" of OSD's trademark rights. (*See* FAC, Ex. 31.) But, this lawsuit was not filed until December 2024, and OSD did not assert any counterclaims until June 2025. OSD waited longer than four years to bring its claims and, accordingly, its claims are time barred. At the pleading stage, courts frequently resolve claims when the face of the pleadings confirmed they were not brought within the applicable limitations period. *See, e.g.*, *Free Kick Master*, 2016 WL 777916, at

*7 (dismissing common law trademark and unfair competition claims, as well as §17200 unfair competition claim); *Jenny Yoo Collection, Inc. v. Essence of Australia, Inc.*, No. 17-cv-2666, 2018 WL 3744060, at *8 (D. Kan. Aug. 7, 2018) (dismissing state law trade dress infringement and unfair competition claim); *Tanasescu v. Kremer*, No. 17-cv-1513, 2019 WL 1091338, at *3–4 (C.D. Cal. Jan. 16, 2019), *aff'd*, No. 19-56350, 2021 WL 7085104 (9th Cir. May 20, 2021) (dismissing several claims including claims for RICO, defamation, tortious interference, and intentional infliction of emotional distress); *Isaacs v. USC Keck Sch. of Med.*, 853 F. App'x 114, 115–16 (9th Cir. 2021) (affirming dismissal of breach of contract, rescission, and fraud claims); *Carrion v. United Student Aid Funds, Inc.*, No. 15-cv-829, 2015 WL 13914997, at *4 (C.D. Cal. Aug. 18, 2015), *aff'd*, 709 F. App'x 498 (9th Cir. 2018) (dismissing Fair Credit Reporting Act claim).  The Court should do likewise here.

### 2.  Counterclaim 1 Is Barred by Laches (Count I)

Similarly, OSD's Counterclaim 1 and Synopsys' Count I are ripe for resolution because OSD is barred by laches.  As the pleadings confirm, Synopsys openly used its SYNOPSYS® mark in connection with the sale of optical design software since at least 2010, and OSD had notice of those uses. (ECF 42, Counterclaims ¶22.) Indeed, a page on OSD's own website dating to 2011 touted its offerings as "the *real* SYNOPSYS," and by 2013, OSD's website directly compared its offerings to Synopsys' CODE V®, referencing CODE V® documentation that bore the SYNOPSYS® mark. (ECF 42, Answer ¶1; FAC, Exs. 19, 21.)  On these undisputed facts, there can be no question OSD "should have known" of a potential cause of action under the Lanham Act by 2013 (if not 2011).  *See Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, No. 23-55774, 2024 WL 4750497, at *2 (9th Cir. Nov. 12, 2024).  Yet, OSD sat on its hands for the next decade.

Worse still, it is undisputed that OSD ***was fully aware*** of a potential cause of action by June 2018 (and even OSD's current owner had personal knowledge no later than September 2019), yet failed to file suit for over five years. (ECF 42, Answer ¶1;

7

1  *see also* FAC, Exs. 29, 31.)   OSD's inaction ended only when OSD filed its

2  Counterclaims in June 2025.

3  　　　The defense of laches "can defeat an otherwise valid claim under the Lanham

4  Act." *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d

5  1102, 1108 (9th Cir. 2006).  The laches analysis begins by determining whether the

6  party brought suit within the limitations period for "the most closely analogous action

7  under state law." *Id.* (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d

8  829, 836, 838 (9th Cir. 2002)).  If the claim was brought outside that period, there is

9  a "strong presumption" that laches applies.  *Id.*  The laches period starts when the

10  party "knew (or should have known) of the allegedly infringing conduct," and ends

11  at the filing of the claim in response to which the defendant invokes the laches

12  defense.  *Harman*, 2024 WL 4750497, at \*2.

13  　　　After determining whether a presumption applies, courts must then balance six

14  factors "to determine whether the trademark owner's delay in filing suit was

15  unreasonable and, therefore, barred":  (1) strength and value of the trademark rights

16  asserted; (2) plaintiff's diligence in enforcing the mark; (3) harm to the senior user if

17  relief is denied; (4) good faith ignorance by the junior user; (5) competition between

18  the senior and junior users; and (6) extent of harm suffered by the junior user because

19  of the senior user's delay. *Tillamook*, 465 F.3d at 1108 (citing *E-Sys., Inc. v. Monitek,*

20  *Inc.*, 720 F.2d 604, 607 (9th Cir. 1983)).  The undisputed facts here confirm that OSD

21  cannot overcome the "strong presumption" that laches bars any trademark claim.

22  　　　　　　　**a.**　　**OSD's Claims Are Untimely Under Analogous State Law**

23  　　　For Lanham Act claims, the "most closely analogous action" under California

24  law for purposes of laches is state law trademark infringement. *See Pinkette Clothing,*

25  *Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018); *Harman*, 2024 WL

26  4750497, at \*2.  As noted above, the limitations period for state-law trademark

27  infringement in California is no longer than four years (Section IV.A.1, *supra*), and

28

1  courts apply this four-year limitations period in the laches analysis.  *See Pinkette*, 894

2  F.3d at 1025; *Harman*, 2024 WL 4750497, at *2.

3      As noted above, OSD knew of a potential cause of action by 2018 (and should

4  have known of a potential cause of action since at least 2011), yet waited over five

5  years to bring its claims—longer than the analogous four-year limitations period

6  under state law.  (Section IV.A.I, *supra*.)  There is thus a "strong presumption" that

7  laches applies.  *Tillamook*, 465 F.3d at 1108.

8              **b.    OSD Unreasonably Delayed Filing Suit**

9      Applying the undisputed facts set forth in the pleadings to the six laches factors

10  confirms that OSD unreasonably delayed in filing suit.

11      The **first factor** concerns the "strength and value of the rights asserted."  This

12  factor weighs in favor of applying laches where the junior user (Synopsys) has a

13  "valuable and strong" mark as compared to the senior user (OSD).  *E-Sys.*, 720 F.2d

14  at 607.  OSD alleges, and the Court must accept as true, that Synopsys' registered

15  trademark is commercially strong; according to OSD, Synopsys "acquired worldwide

16  recognition," "great[] size" and "market power."  (ECF 42, Counterclaims ¶¶14, 21.)

17  These allegations stand in sharp contrast to the limited commercial strength of OSD's

18  mark; as OSD alleges, it is "not a large company" and spent mere "thousands of

19  dollars annually" to promote its products.  (*Id.* ¶12.)  Thus, the undisputed facts weigh

20  in favor of finding that OSD's claims are barred.

21      *Move Press, LLC v. Peloton Interactive, Inc.*, is illustrative:  although both

22  parties used the same mark ("PELOTON"), the court found this first factor to weigh

23  in favor of laches because the accused infringer's mark was "substantially more

24  valuable due to [its] 'rapid and continuing growth' relative to that of [plaintiff]."  No.

25  18-cv-1686, 2019 WL 4570018, at *5 (C.D. Cal. Sept. 5, 2019).  Moreover, courts

26  recognize that where the junior user has a strong mark, "it would be inequitable to

27  force [them] to abandon the name."  *E-Sys.*, 720 F.2d at 607.

28

The **second factor** concerns "plaintiff's diligence in enforcing the mark." Here, a lack of diligence weighs in favor of applying laches. *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1102–03 (9th Cir. 2004). This factor considers not only the plaintiff's delay in bringing suit, but also any efforts made by the plaintiff to contact the accused infringer in the interim. *See id.* (plaintiff attempted to contact defendant three times in four years); *Fitbug*, 78 F. Supp. 3d at 1193 (plaintiff delayed three years before sending cease-and-desist letter).

Here, OSD admits it distinguished its offerings from Synopsys' and referred to its product as "the *real* SYNOPSYS" by 2011 (ECF 42, Answer ¶1), and that Synopsys openly used its SYNOPSYS® mark in connection with Code V starting in 2010 (*id.*, Counterclaims ¶¶18, 22). In June 2018, OSD's predecessor, Optical Systems Design, Inc., told Synopsys that its company name was confusingly similar to OSD's SYNOPSYS™ mark. (FAC, Ex. 29 at 1.) And in September 2019, OSD identified a "plausible breach" of its trademark rights. (FAC, Ex. 31.) Yet, despite actual knowledge of what was—by OSD's own admission—a possible act of trademark infringement, OSD did not pursue the issue further until sending a letter to Synopsys in June 2024, and did not bring its counterclaims until June 2025, over five years after first learning of possible trademark infringement. (Section II, *supra*.) This consistent inaction evidences a lack of diligence.

Courts have found this factors to weigh in favor of laches even where rightsholders were far more proactive than OSD. In *Grupo Gigante,* the court found this factor evidenced a lack of diligence where the plaintiff made three attempts to contact the accused infringer over the four years prior to bringing suit. 391 F.3d at 1102. Similarly, in *Fitbug*, the court found a lack of diligence where the plaintiff waited slightly more than three years after learning of the cause of action to send a cease-and-desist letter. 78 F. Supp. 3d at 1193. Here, it is undisputed OSD waited more than five years to send a cease-and-desist letter and bring its counterclaims.

10

The **third factor** concerns "harm to [the] senior user if relief [is] denied." In analyzing this factor, courts recognize a lengthy history of co-existence can weigh in favor of applying laches. *See Grupo Gigante*, 391 F.3d at 1103–04. In *Grupo Gigante*, the district court observed the parties had "co-existed … for almost ten years," and held there would be "no threat of great harm to the plaintiffs if the status quo were to be maintained." *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 119 F. Supp. 2d 1083, 1105 (C.D. Cal. 2000), *aff'd in relevant part*, 391 F.3d 1088 (9th Cir. 2004). So too here. As noted above, it is undisputed Synopsys used its SYNOPSYS® mark in connection with optical design products and services since at least 2010—in other words, the parties have "co-existed" for at least 15 years. (FAC ¶43; ECF 42, Counterclaims ¶22.) Especially in light of its delay in bringing suit, OSD cannot seriously contend it would experience "great harm … if the status quo were to be maintained." *See Grupo Gigante*, 119 F. Supp. 2d at 1105.

Other cases have held this factor "turns largely on the court's analysis of the likelihood of confusion." *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, 668 F. Supp. 3d 1025 (C.D. Cal. 2023), *aff'd*, 2024 WL 4750497 (9th Cir. Nov. 12, 2024) (citation omitted). Although factual disputes exist regarding the likelihood of confusion, the Court need not resolve them in order to find for Synopsys at this stage based on the undisputed facts in the pleadings. *See, e.g.*, *Worx4u2, Inc. v. Earthwhile Endeavors, Inc.*, No. 20-cv-11455, 2022 WL 1601399, at *12 (C.D. Cal. Apr. 5, 2022) ("even assuming the third *E-Systems* factor weighed strongly in Plaintiff's favor … it would be insufficient to affect the overall weight of the *E-Systems* factors favoring Defendants").

The **fourth factor** concerns "good faith ignorance by the junior user." There can be no reasonable dispute that Synopsys initially adopted its SYNOPSYS® mark in good faith. Synopsys was founded in 1986, and began registering its SYNOPSYS® trademark by 1989. (Section II, *supra*.) When Synopsys acquired ORA in 2010 and began offering its optical design products using the SYNOPSYS®

11

mark, Synopsys merely extended its existing brand and goodwill to these new products. (FAC ¶¶31–37.) On similar facts, a court in this district held that the defendant did not act in bad faith when it extended its mark to a new geographic market four years after initially adopting that mark. *Roseville Fullerton Burton Holdings, LLC v. Socal Wheels, Inc.*, No. 14-cv-1954, 2016 WL 11750383, at *4 (C.D. Cal. Oct. 11, 2016). The same concept applies to Synopsys' extension of its branding into new products.

Moreover, OSD's efforts to distinguish itself from Synopsys during a lengthy coexistence period—without raising any trademark concerns—likewise weigh against a finding of bad faith. For instance, in *Tillamook*, the Ninth Circuit found the parties' coexistence "for years without [plaintiff] objecting to the use of the mark" meant there was no "bad faith on the part of [defendant]." 465 F.3d at 1110. The undisputed facts are replete with evidence that OSD knew of Synopsys' use of its SYNOPSYS® mark in connection with optical design software, but never objected to that use until years later. (*See* FAC, Exs. 19, 21; Section II, *supra*.)

Further still, Synopsys' open and widespread use of the SYNOPSYS® mark, as alleged by OSD, confirms it acted in good faith. (*See* ECF 42, Counterclaims ¶14 (alleging Synopsys is "prominent" in the industry and "has acquired worldwide recognition").) As the Ninth Circuit explained, where a defendant uses a mark "extensively and never attempt[s] to hide his use of the mark," that fact weighs in favor of applying laches. *Ramirez v. Navarro*, No. 23-55112, 2024 WL 1874993, at *2 (9th Cir. Apr. 30, 2024).

The **fifth factor** concerns "competition between senior and junior users." In assessing this factor, the Court must accept as true OSD's allegation that Synopsys' optical design software directly competes with OSD's SYNOPSYS™ product. (ECF 42, Counterclaims ¶16.) That fact, however, does not preclude application of laches. For example, in *Grupo Gigante*, the Ninth Circuit affirmed the district court's application of laches, even though this factor "weigh[ed] heavily in [plaintiff's]

12

favor." 391 F.3d at 1105; s*ee also Roseville*, 2016 WL 11750383, at *4–5 (finding factor weighed against laches, due to "high level of competition between the parties," but nonetheless holding that the factors as a whole weighed in favor of laches); *Move Press*, 2019 WL 4570018, at *6 ("Even without weighing the third and fifth factors, a consideration of the four other ones shows that they weigh heavily in favor of [the accused infringer]."). Accordingly, the competition between OSD and Synopsys does not foreclose a finding that OSD failed to diligently pursue its claim.

The **sixth factor** concerns the "extent of harm suffered by [the] junior user because of [the] senior user's delay." Such harm is substantial here. It is undisputed that for nearly 15 years, Synopsys significantly invested in its optical design software business, continuously expanding its product and service offerings and extending its use of the SYNOPSYS® mark in that industry sector. (FAC ¶¶30, 35; ECF 42, Answer ¶14.) That investment came during the longstanding coexistence in the market between its own offerings and OSD's. Courts recognize that under such circumstances, this factor favors laches.

For example, in *Harman*, the court found the accused infringer's "continued investment in a line of products generating substantial sales" was sufficient for this factor to weigh in favor of laches. *Harman*, 668 F. Supp. 3d at 1044. Similarly, in *Pinkette*, the accused infringer "continued to invest in its" mark and business during the period of delay, such as by advertising and by attending trade shows, and those facts weighed in favor of applying laches. 894 F.3d at 1028. Synopsys' similar investment in its optical design products and services (which likewise included generating substantial sales and attending trade shows) likewise weighs in favor of the application of laches here.

\*   \*   \*

In short, OSD's failure to act for years even after discovering a plausible claim of infringement creates a strong presumption that its claims are barred, and the *E-Systems* factors "validate[] the strong presumption in favor of laches." *See id.* On the

13

undisputed factual record, taken as a whole, the above factors weigh in favor of applying laches here. *See Roseville*, 2016 WL 11750383, at \*3–5 (laches applied where "four of the six factors weigh[ed] in [accused infringer's] favor"); *Pinkette*, 894 F.3d at 1027–29 (affirming application of laches where "strength and value of [the] trademark rights asserted" weighed against laches and "harm to [the] senior user if relief [is] denied" factor was neutral); *Harman*, 668 F. Supp. 3d at 1044 (four factors weighed in favor of laches); *Move Press*, 2019 WL 4570018, at \*6 ("Even without weighing the third and fifth factors, a consideration of the four other ones shows that they weigh heavily in favor of [accused infringer]."); *Worx4u2*, 2022 WL 1601399, at \*12 ("At least five of the *E-Systems* factors support a finding of laches. In addition, even assuming the third *E-Systems* factor weighed strongly in Plaintiff's favor, the Court concludes that it would be insufficient to affect the overall weight of the *E-Systems* factors favoring Defendants."); *Grupo Gigante*, 391 F.3d at 1095 (applying laches even though "[o]ne factor, competition between the parties, weighed heavily in [plaintiff's] favor"). This Court should likewise hold that OSD's Counterclaim 1 is barred by laches.

## B. In the Alternative, Judgment Should Be Granted on Three Aspects of OSD's Answer and Counterclaims

If the Court does not grant judgment on the laches and statute of limitations defenses, the Court should, in the alternative, grant judgment on three aspects of OSD's Answer and Counterclaims. **First**, OSD's Counterclaim 1 (false designation of origin) fails because OSD did not plead that claim with particularity, and because Synopsys has not used a false designation. **Second**, OSD's request for declaratory relief in the "Prayer for Relief" section of its counterclaims fails because OSD did not bring a claim under the Declaratory Judgment Act. And **third**, OSD's unclean hands defense fails because it did not allege the requisite fraudulent intent, and Synopsys is not asserting any rights of its own in this litigation.

### 1.    Counterclaim 1 Does Not State a Claim for False Designation of Origin

Separate from the delay in bringing its claims, OSD's Counterclaim 1 (false designation of origin) fails for two additional reasons. **First**, OSD failed to plead this claim with particularity as required under Federal Rule of Civil Procedure 9(b). **Second**, there is nothing "false" about Synopsys' use of the SYNOPSYS® mark to identify its own software products.

OSD styles Counterclaim 1 as follows: "False Designation of Origin in Violation of 15 U.S.C. §1125(a) – Forward and Reverse Confusion." (ECF 42 at 13.) Although OSD does not use the term "reverse confusion" again, except for a passing reference in ¶3 (ECF 42 at 5, 13), Synopsys assumes this styling indicates a claim for false designation of origin in both its traditional and "reverse" forms.

### a.    OSD Did Not Plead Counterclaim 1 with Particularity

Judgment on the pleadings is warranted because OSD failed to plead Counterclaim 1 with particularity. Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." When a claim for false designation of origin is "grounded in fraud," the "abundance of relevant and persuasive case law" supports applying Rule 9(b) to the false designation claim. *Julian Bakery, Inc. v. Healthsource Int'l, Inc.*, No. 16-cv-2594, 2018 WL 1524499, at \*4 (S.D. Cal. Mar. 28, 2018) (collecting cases); *see also Sparrow Inc. v. Lora*, No. 14-cv-1188, 2014 WL 12561587 (C.D. Cal. Aug. 5, 2014) (dismissing Lanham Act claim for failure to comply with Rule 9(b)).

OSD's false designation of origin counterclaim is "grounded in fraud," as its "allegations in support of [this count] are based upon alleged misrepresentations." *Id.* Specifically, OSD alleges in Counterclaim 1 that "Synopsys' use of its SYNOPSYS® mark … is *intended to cause* … confusion, mistake and deception among the consuming public and the trade." (ECF 42, Counterclaims ¶30 (emphasis added).)

15

1    Further, OSD alleges Synopsys' use was "contrary to [Synopsys'] representations to

2    OSD," and undertaken "with full knowledge of OSD's prior common law rights."

3    (*Id.* ¶27.)  OSD rests its claim on a statement by Synopsys that "[w]e do not have

4    intention or plan to market any individual product under the name 'Synopsys' now or

5    in the future," which OSD contends in its pleading was knowingly "false and

6    misleading." (ECF 42, Counterclaims ¶17.)  Accordingly, to satisfy Rule 9(b), OSD

7    must identify the "who, what, when, where, and how of the misconduct charged, as

8    well as what is false or misleading about the purportedly false statement, and why it

9    is false." *Julian Bakery*, 2018 WL 1524499, at *5 (citation omitted). It cannot do so,

10   because there was nothing false about Synopsys correctly identifying ***its own software***

11   (marketed under different names, such as CODE V® and LightTools®) as originating

12   from Synopsys and branding it with its own registered SYNOPSYS® mark along

13   with the particular product's name.  Nor does OSD's pleading make the requisite

14   showing.

15       To state a claim, OSD had to allege "the specific context with which the mark

16   was used, when the mark was used, what [items] it was used on, and how this use is

17   likely to confuse the consumer." *Julian Bakery*, 2018 WL 1524499, at *6.  At most,

18   OSD identified a "who," "what," and "when" regarding a single Synopsys statement,

19   but not what is false or misleading about that statement or how it is likely to confuse

20   the consumer. (ECF 42, Counterclaims ¶¶17–20.)  Indeed, OSD points only to private

21   communications between Synopsys and OSD—not statements to consumers—which

22   could not have confused anyone but perhaps OSD.  *See* 15 U.S.C. §1125(a) (requiring

23   "use in commerce" in order to find a violation).  This does not suffice.  As the Ninth

24   Circuit noted with respect to Rule 9(b), "a plaintiff must set forth *more* than the neutral

25   facts necessary to identify the transaction.  The plaintiff must set forth what is false

26   or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*,

27   317 F.3d 1097, 1106 (9th Cir. 2003) (cleaned up, emphasis original).  OSD's failure

28   to identify with particularity any falsity in commerce dooms its claim.

While OSD alludes to other, unspecified "representations" (plural) that were allegedly false, it does not identify any such representations or provide the particulars of those statements.  The only specific allegation OSD makes relates to the above-discussed email between Synopsys and OSD.  (*See* ECF 42, Counterclaims ¶¶22–24, 27.)  OSD's articulation of "essentially no details about [other] alleged misrepresentations" made in commerce also fails to satisfy Rule 9(b).  *See Sparrow*, 2014 WL 12561587, at *5–6.

### b.    Synopsys Has Not Used a False Designation

Judgment is also warranted because there is nothing false about Synopsys' use of its own SYNOPSYS® mark.  The Lanham Act prohibits the use in commerce of "any word, *false designation of origin*, false or misleading description, or representation of fact" that "is likely to cause confusion or misrepresents the characteristics of [defendant's] or another person's goods or services."  *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-cv-1865, 2018 WL 4078588, at *6 (S.D. Cal. Aug. 23, 2018) (emphasis added) (quoting *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007)).  In particular, a false designation of origin claim under the Lanham Act, 15 U.S.C. §1125(a), protects against "passing off," which "occurs when a producer sells its own goods as that of another brand."  *R & A Synergy LLC v. Spanx, Inc.*, No. 17-cv-9147, 2019 WL 4390564, at *13 (C.D. Cal. May 1, 2019) (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003)).  In order to be liable for false designation of origin, a defendant's statements in commerce "must be deceptive or misleading; that is, the use must be wrongful in some way."  *Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1148 (S.D. Cal. 2021).  Put simply, a "false designation of origin" requires a *falsity* in commerce, and *cannot be brought* "merely because of potential confusion."  *Id.*

The "reverse" form of false designation of origin, also referred to as "reverse passing off," occurs where "a producer sells another's products under its own name."  *R & A Synergy*, 2019 WL 4390564, at *13.  In the Ninth Circuit, "a reverse

1    passing off claim requires the alteration of a product and a subsequent sale." *Id.* at

2    *15 (quoting *Luxul Technology Inc. v. Nectarlux, LLC*, 78 F. Supp 3d 1156, 1171

3    (N.D. Cal 2015)).

4        Importantly, a defendant is not liable for false designation of origin when it

5    uses a mark it is "lawfully permitted to use." *Zamfir*, 528 F. Supp. 3d at 1148. That

6    is the case here. As OSD concedes, Synopsys has numerous trademark registrations,

7    dating back to 1989, which are now incontestable. (ECF 42, Counterclaims ¶ 14.)

8    While using its SYNOPSYS® trademark, Synopsys became a "global software

9    leader" and its brand "acquired worldwide recognition." *Id.* And, when Synopsys

10   acquired ORA in 2010, and began offering ORA's optical design products in

11   connection with the SYNOPSYS® mark, it extended its brand and use of the mark to

12   those products. Simply put, Synopsys' use of the SYNOPSYS® mark in connection

13   with optical design products and services simply reflects that those products and

14   services originate from Synopsys—which is true and undisputed. (*Id.* ¶ 16.) At

15   bottom, OSD cannot and does not dispute that Synopsys has an "unchallenged lawful

16   right to use" its SYNOPSYS® mark, which is fatal to its claim. *Zamfir*, 528 F. Supp.

17   3d at 1148.

18       In similar circumstances, other courts in this Circuit have found those claims

19   cannot sound in false designation of origin. For example, in *City of Leavenworth v.*

20   *Projekt Bayern Association*, No. 22-cv-174, 2022 WL 4546550, at *4 (E.D. Wash.

21   Sept. 28, 2022), the court found no false designation of origin, even though there was

22   "considerable evidence demonstrating confusion among consumers as to the

23   relationship between Plaintiff and Defendant," because the defendant "ha[d] the right

24   to use the mark." Similarly, in *City-Core Hospitality, LLC v. Palmer*, No. 17-cv-

25   05544, 2018 WL 398257, at *3 (N.D. Cal. Jan. 12, 2018), the court held that defendant

26   that had licensed the right to use a mark "d[id] not falsely designate the source of the

27   mark's goodwill in using the mark." As in *Zamfir*, *City of Leavenworth*, and *City-*

28   *Core*, there is nothing "wrongful" about Synopsys' use of its SYNOPSYS® mark in

18

1  connection with its own goods and services.  Thus, judgment for Synopsys on OSD's

2  Counterclaim 1 is warranted.

3       In addition, to the extent OSD bases its false designation of origin counterclaim

4  on "reverse passing off," that theory likewise finds no support in the pleadings.  As

5  noted, reverse passing off "requires the alteration of a product and a subsequent sale."

6  *R & A Synergy*, 2019 WL 4390564, at *15 (citation omitted).  OSD did not allege that

7  Synopsys "alter[ed]" Code V or any other optical product, and therefore did not state

8  a claim for reverse passing off.  *See id.*

9           **2.    OSD's Request for Declaratory Relief Is Improper**

10      In the "Prayer for Relief" section of its counterclaims, OSD asks the Court to

11 declare "[t]hat OSD owns valid and subsisting trademark rights in its SYNOPSYS™

12 mark in the optical design software space that are superior to any trademark rights

13 Synopsys claims in that space." (ECF 42 at 16.)  But OSD did not bring a claim for

14 declaratory judgment.  Accordingly, this requested relief is unavailable.

15      Declaratory relief is a "remedy" Congress established under the Declaratory

16 Judgment Act, 28 U.S.C. §2201.  *Los Molinos Mut. Water Co. v. Ekdahl*, 695 F. Supp.

17 3d 1174, 1205 (E.D. Cal. 2023).  The text of the Declaratory Judgment Act is clear:

18 federal courts may "declare the rights and other legal relationships" of the parties only

19 "upon the filing of an appropriate pleading." 28 U.S.C. §2201(a).  Declaratory relief

20 is not an available remedy under the Lanham Act itself, nor under common law or

21 state law governing unfair competition.  *See* 15 U.S.C. §§1116–17 (setting forth

22 remedies for Lanham Act violations); *Coach, Inc. v. Citi Trends, Inc.*, No. 17-cv-

23 4775, 2019 WL 13146765, at *6–7 (C.D. Cal. Dec. 23, 2019) (identifying damages

24 and injunctive relief as potential unfair competition remedies).  Because OSD did not

25 bring a claim for which declaratory relief is available, such as a claim under the

26 Declaratory Judgment Act, declaratory relief cannot be granted here.

27      Even if OSD's Counterclaims could constitute an "appropriate pleading" under

28 the Declaratory Judgment Act, its request for declaratory relief should nonetheless be

dismissed because it "serves no useful purpose." *Fine v. Kansas City Life Ins. Co.*, 627 F. Supp. 3d 1153, 1165 (C.D. Cal. 2022). Courts frequently dismiss requests for declaratory relief when they are "duplicative" of issues arising under the other claims in the case. *Id.* Here, the scope of the rights owned by OSD and Synopsys in their SYNOPSYS™ and SYNOPSYS® marks, respectively, will necessarily be decided in the course of resolving OSD's trademark infringement and unfair competition claims, and Synopsys' claims for laches and equitable estoppel. (*See* ECF 42 at 16.) Accordingly, OSD's request for declaratory relief is procedurally improper and "serves no useful purpose," and should therefore be dismissed. *See Fine*, 627 F. Supp. 3d at 1165.

### 3. Unclean Hands Defense Is Not Supported by the Pleadings

Finally, OSD's affirmative defense of "unclean hands" is unsupported by the pleadings. (ECF 42, Answer ¶6.) As with a party's affirmative causes of action, "a plaintiff may challenge a defendant's failure to state a viable legal defense through a Rule 12(c) motion." *SEC v. Payward, Inc.*, 763 F. Supp. 3d 901, 908 (N.D. Cal. 2025) (citing cases). The standard with respect to affirmative defenses is essentially the same as that for a cause of action: courts consider whether the "affirmative defenses … fail[] to state facts that would support [the proponent's] legal theories." *Id.* Here, OSD failed to state facts supporting its unclean hands defense.

As the Court recognized in ruling on OSD's partial motion to dismiss, an unclean hands defense must be supported by allegations that provide "a firm conviction that the defendant acted with a fraudulent intent in making the challenged claims." (ECF 39 at 8 (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 842 (9th Cir. 2002)).) It is not enough for the party invoking the defense to simply allege "that the [other party] made claims knowing that they were false." (*Id.* (quoting *Jarrow*, 304 F.3d at 841).) But that is all OSD alleges here. At most, OSD alleges Synopsys "mis[led] OSD as to its intentions and conduct regarding OSD's SYNOPSYS™ mark." (ECF 42, Answer ¶6.) Even if true—and Synopsys denies it

20

is—OSD's pleading does not create "a firm conviction that [Synopsys] acted with a fraudulent intent," which weighs in favor of dismissal. *See Jarrow*, 304 F.3d at 841.

In addition, as OSD argued at the motion-to-dismiss stage, the relevant inquiry for unclean hands "is 'not [whether] the plaintiff's hands are dirty, but [whether] [s]he dirtied them in acquiring the right [s]he now asserts.'" (ECF 35 at 10 (quoting *Pom Wonderful LLC v. Coca-Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016)) (alterations in pleading).) In other words, "unclean hands" in the trademark context applies only when it concerns "the getting or using of the trademark rights that plaintiff was attempting to enforce." *Valentino S.p.A. v. Mario Valentino S.p.A.*, No. 19-cv-6306, 2021 WL 6882327, at *15 (C.D. Cal. Apr. 9, 2021) (cited in motion to dismiss, ECF 33 at 16). But Synopsys does not enforce ***any*** trademark rights in this action; it simply seeks to defend itself from OSD's belated and unsupported claims that Synopsys infringed OSD's trademark rights. For that independent reason, Synopsys cannot have acted with unclean hands, because there are no "trademark rights that [Synopsys is] attempting to enforce." *See id.*

## V.    CONCLUSION

For the reasons set forth above, Synopsys' motion for judgment on the pleadings should be granted.

Dated:  July 29, 2025

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By:  _/s/ Krista S. Schwartz_
     Krista S. Schwartz
     Barrington Dyer
     Aliza George Carrano (*Pro Hac Vice pending*)
     Devon W. Edwards (*Pro Hac Vice pending*)
     Ann N. Hopkins
     Jacob Karim
     Dane Sowers (*Pro Hac Vice pending*)

     Attorneys for Plaintiff
     SYNOPSYS, INC.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS / Case No. 2:24-cv-10515-DSF-JC

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Synopsys, Inc., certifies that this brief

3   contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

4

5   Date: July 29, 2025          */s/ Krista S. Schwartz*
                                 Krista S. Schwartz

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT
ON THE PLEADINGS / Case No. 2:24-cv-10515-DSF-JC