**WILLKIE FARR & GALLAGHER LLP**
Krista S. Schwartz (Bar No. 303604)
  kschwartz@willkie.com
Barrington Dyer (Bar No. 264762)
  bdyer@willkie.com
Ann N. Hopkins (Bar No. 325474)
  ahopkins@willkie.com
Jacob Karim (Bar No. 340376)
  jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

**WILLKIE FARR & GALLAGHER LLP**
Aliza George Carrano (*Pro Hac Vice* pending)
  acarrano@willkie.com
Dane Sowers (*Pro Hac Vice* pending)
  dsowers@willkie.com
1875 K Street, N.W.
Washington, DC 20006
Telephone: (202) 303-1000

**WILLKIE FARR & GALLAGHER LLP**
Devon W. Edwards (*Pro Hac Vice* pending)
  dedwards@willkie.com
787 Seventh Ave.
New York, NY 10019
Telephone: (212) 728-8000

Attorneys for Plaintiff
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC., <br><br> Plaintiff, <br><br> v. <br><br> OPTICAL SYSTEMS DESIGN LLC, <br><br> Defendant. | Case No. 2:24-cv-10515-DSF-JC <br><br> Judge: Hon. Dale S. Fischer <br> Ctrm: 7D <br><br> DATE: September 8, 2025 <br> TIME: 1:30 p.m. |
| OPTICAL SYSTEMS DESIGN LLC, <br><br> Counter-Claimant, <br><br> v. <br><br> SYNOPSYS, INC., <br><br> Counter-Defendant. | **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 1

    A. The Limitations and Laches Periods Began in 2019 at the Latest ...... 1

    B. Counterclaims 2 and 3 are Barred by the Statute of Limitations ........ 3

    C. Counterclaim 1 is Barred by Laches ................................................... 4

        1. Factor 1: Strength and Value of the Rights Asserted .............. 5

        2. Factor 2: OSD's Lack of Diligence in Enforcing the Mark ..... 5

        3. Factor 3: Harm to Senior User if Relief is Denied .................. 6

        4. Factor 4: Good Faith Ignorance by the Junior User................ 7

        5. Factor 6: Extent of Harm Suffered Due to Senior User's Delay ......................................................................................... 8

    D. In the Alternative, Judgment Is Warranted on Other Aspects of OSD's Counterclaims and Defenses.............................................................. 9

        1. OSD's Counterclaim 1 Fails .................................................... 9

        2. OSD's Request for Declaratory Relief Fails ....................... 10

        3. OSD's Unclean Hands Defense Fails ................................. 11

    E. Leave to Amend Should Not Be Granted ....................................... 12

III. CONCLUSION............................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aryeh v. Canon Bus. Sols., Inc.*,
   55 Cal.4th 1185 (Cal. 2013) ................................................................................3, 4

*Doe v. Garland*,
   17 F.4th 941 (9th Cir. 2021) ................................................................................ 12

*Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*,
   880 F.3d 1109 (9th Cir. 2018) ............................................................................3, 8

*Evergreen Safety Council v. RSA Network Inc.*,
   697 F.3d 1221 (9th Cir. 2012) ................................................................................ 3

*Fitbug Ltd. v. Fitbit, Inc.*,
   78 F. Supp. 3d 1180 (N.D. Cal. 2015) ................................................................... 6

*Free Kick Master LLC v. Apple Inc.*,
   2016 WL 777916 (N.D. Cal. Feb. 29, 2016) .......................................................3, 4

*Gamez v. Summit Nats. Inc.*,
   2022 WL 17886027 (C.D. Cal. Oct. 24, 2022) ..................................................... 6

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) ............................................................................... 12

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
   2015 WL 12731920 (C.D. Cal. Sept. 21, 2015) .................................................. 10

*Grupo Gigante SA De CV v. Dallo & Co.*,
   391 F.3d 1088 (9th Cir. 2004) ...................................................................... 5, 6, 7

*Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*,
   668 F. Supp. 3d 1025 (C.D. Cal. 2023) ................................................................. 8

*Iovino v. AmTrust Fin. Servs., Inc.*,
   2025 WL 343356 (D. Nev. Jan. 30, 2025) .......................................................... 11

*Julian Bakery, Inc. v. Healthsource Int'l, Inc.*,
   2018 WL 1524499 (S.D. Cal. Mar. 28, 2018) ....................................................... 9

*M.I.B. Grp. LLC v. Aguilar*
   2024 WL 3857540 (C.D. Cal. July 16, 2024) ............................................... 11

*Miller v. Glenn Miller Prods., Inc.*,
   454 F.3d 975 (9th Cir. 2006) .................................................................. 3, 4

*Move Press, LLC v. Peloton Interactive, Inc.*,
   2019 WL 4570018 (C.D. Cal. Sept. 5, 2019) ................................................ 5

*New Penn Fin., LLC v. Riverwalk Ranch Master Homeowners Ass'n*,
   2018 WL 5621864 (D. Nev. Oct. 29, 2018) ................................................ 11

*Roseville Fullerton Burton Holdings, LLC v. Socal Wheels, Inc.*,
   2016 WL 11750383 (C.D. Cal. Oct. 11, 2016) .............................................. 8

*Sparrow Inc. v. Lora*,
   2014 WL 12561587 (C.D. Cal. Aug. 5, 2014) ............................................... 9

*Target Tech. Co., LLC v. Williams Advanced Materials, Inc.*,
   2008 WL 5002935 (C.D. Cal. Nov. 21, 2008) ............................................... 2

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
   465 F.3d 1102 (9th Cir. 2006) ................................................................... 8

*Valentino S.p.A. v. Mario Valentino S.p.A.*,
   2021 WL 6882327 (C.D. Cal. Apr. 9, 2021) ............................................... 12

**Statutes**

15 U.S.C. §1125(a) ..................................................................................... 10

**Other Authorities**

Fed. R. Civ. Proc. 9(b) .................................................................................. 9

I.   **INTRODUCTION**

As set forth in Plaintiff Synopsys, Inc.'s ("Synopsys") Motion for Judgment on the Pleadings (ECF 50-1, "Mot."), the undisputed facts render OSD's claims untimely. Synopsys began openly using its registered SYNOPSYS® mark on optical design software in 2010; OSD knew of Synopsys' use and the two companies coexisted peaceably for over a decade. Indeed, OSD admits that (1) in 2011, OSD's website distinguished its offering from those of Plaintiff Synopsys, branding itself as "[t]he *real* SYNOPSYS"; (2) in 2013, OSD's website referenced CODE V® documentation that bore the SYNOPSYS® mark; (3) in 2018, OSD's then-owner told Synopsys its company name was "confusingly similar" to that of OSD's software; and (4) in 2019, OSD's new owner wrote to Synopsys about a "plausible breach" of its trademark rights. (Mot. at 3–4, 7.) Moreover, OSD alleges it "engaged in extensive sales and marketing efforts," including attending trade shows and advertising in national magazines (ECF 42, "Counterclaims" ¶12), where its products would have appeared next to those of Synopsys. Yet, OSD did not raise the issue again until 2024, and did not bring its counterclaims until 2025.

In opposing Synopsys' motion (ECF 52, "Opp."), OSD overlooks these dispositive facts, and asks the Court to draw unreasonable inferences in its favor. But, even accepting OSD's allegation that it had no notice of the supposed infringement for nearly a decade, OSD offers no explanation for why its "investigation" lasted ***five years***, from 2019 to 2024—especially since OSD needed to look no further than Synopsys' own website and social media channels to find the evidence it needed. (*See* Counterclaims ¶¶18, 22–26.) OSD's inexcusable delay after 2019 alone bars its claim. No further discovery is necessary, and any amendment would be futile.

II.   **ARGUMENT**

   A.   **The Limitations and Laches Periods Began in 2019 at the Latest**

OSD's state and common law claims (Counterclaims 2 and 3) are barred by the statute of limitations, and OSD's claim for false designation of origin (Counterclaim

1

1) is barred by laches. (Mot. at 5–14.) OSD does not dispute the relevant limitations periods or laches factors set forth by Synopsys. Instead, OSD argues its claims are timely because the limitations and laches periods did not begin until June 2024. (Opp. at 4–5.) That argument cannot be reconciled with undisputed facts. OSD concedes that it "learn[ed] of … possible infringement" in 2019.[1] (Opp. at 4; FAC, Ex. 31.)

Undeterred, OSD argues that knowledge was "not sufficient to start the running of either the limitations or laches periods" because OSD needed to undertake an "investigation" to analyze Synopsys' alleged infringement. (Opp. at 4–5.) But OSD offers no explanation how or why it "did not know of infringement sufficient to justify litigation until June 2024." (*Id.* at 5.) Indeed, as OSD's own pleading makes clear, any investigation would have been straightforward: Synopsys' use of its SYNOPSYS® mark on optical design products was open and notorious, including on its website, in videos posted to its YouTube channel, and in its product manuals. (ECF 42, Counterclaims ¶¶ 18, 20, 22–26.) OSD's invocation of the "discovery rule" (Opp. at 6) cannot save its claims. As courts acknowledge, once a claimant has a "suspicion of wrongdoing," the limitations period begins; a party has "a duty to investigate further and [is] charged with knowledge of facts that would be uncovered in such investigation." *Target Tech. Co., LLC v. Williams Advanced Materials, Inc.*, 2008 WL 5002935, at *12 (C.D. Cal. Nov. 21, 2008). OSD cannot establish the requisite diligence by pointing to years of willful ignorance.

Moreover, the duty to investigate does not toll the limitations or laches periods once a party has notice of a potential claim. Mere "constructive knowledge is enough to start the laches evaluation period," not a precise understanding of the scope of the

---

[1] Even then, Ms. Cheong did not object to Synopsys' use of its brand name and registered SYNOPSYS® mark. Rather, she complained that on the flyer, which was created by a third party, "the word 'SYNOPSYS' appeared ***all in upper case***, matching our trademark." (FAC, Ex. 31 (emphasis added).) As OSD pled, Synopsys' own usage of the mark includes lowercase. (*See* Counterclaims at ¶¶ 23–26.)

alleged infringement. *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1116 (9th Cir. 2018). And, constructive knowledge requires far less than the notice OSD had here. As the *Eat Right Foods* court recognized, it can be satisfied by a single document in the claimant's possession showing the defendant's use, or where the defendant "openly sold merchandise bearing the ... mark". *Id.* (discussing *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012), and *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 999 (9th Cir. 2006)).

Thus, the relevant limitations and laches periods began no later than 2019.

**B.   Counterclaims 2 and 3 are Barred by the Statute of Limitations**

***First***, OSD contends that under the "discovery rule," the limitations period does not begin "when OSD first discovered a single 'plausible' but isolated infringement." (Opp. at 6.) Not so. As set forth above, that flips the rule on its head. It is undisputed that OSD had constructive knowledge of Synopsys' use by no later than 2019; that knowledge began the four-year statute of limitations.

***Second***, trying to circumvent the four-year statute of limitations, OSD asserts that its state law claims are timely under the "continuing violation" doctrine because it alleged a "continuing course of conduct before and within the cited limitations periods." (Opp. at 6 (quoting *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal.4th 1185, 1197–98 (Cal. 2013)).) But this argument fails because the "continuing violations" doctrine does not apply to trademark or unfair competition claims. *Free Kick Master LLC v. Apple Inc.*, 2016 WL 777916, at *8 (N.D. Cal. Feb. 29, 2016) (finding "no merit to plaintiffs' claim that the 'continuing violations' doctrine applies").

As *Free Kick* explains, the "'continuing violations' doctrine is an equitable exception developed and applied mostly in the area of employment and housing discrimination claims." 2016 WL 777916 at *8. In the context of trademark and unfair competition, however, once "aware that the … mark was being used" in an allegedly infringing manner, plaintiffs "could and should have taken diligent action, and are not now entitled to claim the benefit of the equitable 'continuing violations'

doctrine." *Id.* Indeed, while OSD relies on *Aryeh*, *Free Kick* notes that in *Aryeh*, "the doctrine did not apply" because—as in *Free Kick* and here—plaintiff "was aware of the defendant's [ ] acts and recognized them as unlawful" outside the limitations period. *Id.* None of OSD's cases apply the continuing violations doctrine to trademark or unfair competition claims. (Opp. at 6–7.)

**Third**, OSD claims the "continuous accrual rule" provides an end-run around the statute of limitations and it can thus recover for "all infringements that occurred within four years' of Synopsys' suit." (Opp. at 7.) But OSD's lone authority, *Aryeh*, makes clear this rule generally applies "in suits against public entities" and where the defendant owes a "continuous or recurring obligation"—such as monthly payments for rent, a gas and oil lease, or—as in *Aryeh*—"monthly bills" with fraudulent charges. 55 Cal.4th at 1200 (collecting cases). That is not the case here, where Synopsys owed OSD nothing, much less a recurring obligation, and where OSD alleges a lengthy course of trademark infringement rather than discrete "recurring breaches." *Cf. id.* Tellingly, OSD cites no case applying the continuous accrual doctrine to a claim of alleged trademark infringement, and Synopsys is aware of none. Indeed, OSD's theory would swallow the laches defense for Lanham Act claims. Having failed to act for 14 years, OSD cannot now revive its untimely claims. *See Miller*, 454 F.3d at 997 (laches "is 'derived from the maxim that those who sleep on their rights, lose them'") (citation omitted).

In short, OSD failed to bring its state law and common law counterclaims within the limitations period, and Counterclaims 2 and 3 are therefore time-barred.

### C. Counterclaim 1 is Barred by Laches

Because the laches period began to run at least by 2019, a strong presumption of laches applies. (Mot. at 8–9.) In contending that the *E-Systems* factors weigh against laches, OSD misconstrues the pleadings and misrepresents the undisputed facts. Properly applied, these factors compel a finding that OSD's claims are barred.

### 1. Factor 1: Strength and Value of the Rights Asserted

This factor favors an application of laches where the junior user's mark is "valuable and strong" compared to the senior user's mark. (Mot. at 9 (quoting *E-Sys., Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983)).) OSD does not dispute the applicability of Synopsys' cited cases, but instead argues that the comparison of Synopsys' and OSD's marks "raises a factual dispute." (Opp. at 8.) However, OSD never identifies what that dispute is, and there is none, because OSD's own allegations confirm the vast disparity between the strength of Synopsys' registered mark and the strength of OSD's unregistered mark. By OSD's admission, Synopsys has "acquired worldwide recognition," "great[] size," and "market power," whereas OSD is "not a large company" and has spent mere "thousands of dollars annually" to promote its products. (ECF 42, Counterclaims ¶¶14, 21–22.) The Court need not look beyond the pleadings to resolve the relative strength of the two parties' marks.

At most, OSD argues that because its mark is "fanciful" or "conceptually strong," this factor weighs against laches. (Opp. at 8.) But, by OSD's own admission, its mark is descriptive—the mark SYNOPSYS™ is a simple shorthand for what OSD's SYNOPSYS™ product does: "SYNthesis of OPtical SYStems." (FAC ¶38; ECF 42, Answer ¶1 (admitting the allegation)). Descriptive marks are conceptually weak, thus further weighing in favor of laches. *See Move Press, LLC v. Peloton Interactive, Inc.*, 2019 WL 4570018, at *5 (C.D. Cal. Sept. 5, 2019) (finding this factor to weigh in favor of laches where "the parties' PELOTON marks are relatively weak because they are descriptive or suggestive").

### 2. Factor 2: OSD's Lack of Diligence in Enforcing the Mark

As set forth above, OSD's lack of diligence strongly weighs in favor of laches. By its own admission, OSD notified Synopsys of a "plausible breach" in 2019, took nearly five years to "investigate", and then waited another year to file counterclaims. (Mot. at 10.) OSD's lengthy delay evidences even less diligence than plaintiffs in other cases whose claims were barred by laches. *See Grupo Gigante SA De CV v.*

*Dallo & Co.*, 391 F.3d 1088, 1102–03 (9th Cir. 2004) (three attempts to contact accused infringer over four years); *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1193 (N.D. Cal. 2015) (waited three years before sending cease-and-desist letter).

OSD offers two excuses for its lack of diligence: (1) it did not know "whether the scope of proposed infringement will justify the cost of litigation" until June 2024, and (2) Synopsys somehow misled OSD into believing it was not using the SYNOPSYS® mark in connection with optical design products. (Opp. at 8–9.) Each is unavailing. First, laches measures the senior user's diligence from when it "first learned of" the alleged infringement, *Grupo Gigante*, 391 F.3d at 1102, not from when it conducted a cost-benefit analysis to filing suit.[2] Second, OSD's current allegation is an unreasonable inference that this Court need not credit. It is simply not plausible that OSD would have misinterpreted Synopsys' statement that it would not sell "**any individual product** under the name 'Synopsys'" (Opp. at 3 (emphasis added)) as a representation that it would stop using its company name in connection with sales of its optical design products, including Code V, as it had been doing since 2010. And there is no dispute that Synopsys kept its promise not to use the word "Synopsys" as a product name. The Court need not credit OSD's allegations that rest on "unwarranted deductions of fact[] or unreasonable inferences." *Gamez v. Summit Nats. Inc.*, 2022 WL 17886027, at *2 (C.D. Cal. Oct. 24, 2022).

### 3. Factor 3: Harm to Senior User if Relief is Denied

Rather than identifying any specific harm OSD will incur if laches is applied, OSD offers only the *ipse dixit* assertion that allowing Synopsys to use a "nearly indistinguishable" mark from OSD's "certainly harms" OSD. (Opp. at 9 (citation

---

[2] Though Synopsys need not prove OSD's knowledge dating back to 2011, OSD's attempts to explain away its website identifying OSD's software as "the *real* Synopsys" are unavailing. (Opp. at 9.) If OSD believed Synopsys had "continued to brand Code V as an ORA product" in 2011, as it now claims (*id.*), there would have been no need or reason for OSD to promote itself as "the *real* Synopsys."

omitted).) But OSD's failure to allege or identify any specific harm is telling. Indeed, the parties' 14-year coexistence belies any claim of harm: as OSD itself argues, it did not believe it had been sufficiently harmed as to file suit until *last year*. (*See* Opp. at 5–6, 8.) If Synopsys' use of its mark on its Code V optical design software (the product that competes with OSD's SYNOPSYS product) was in fact harming OSD, then by its own admission, OSD should have filed suit long ago. OSD does not—and cannot—identify anything has changed between 2010 and when it filed its counterclaims.

OSD's attempt to distinguish *Grupo Gigante*, where a similarly long period of coexistence weighed in favor of laches, likewise falls flat. (Opp. at 9–10.) Although the parties there initially operated in different countries, the parties co-existed locally on both sides of the U.S.-Mexico border, and there was even "some evidence of actual confusion" presented in that case. *Grupo Gigante*, 391 F.3d at 1103. Nonetheless, the Ninth Circuit affirmed the lower court's finding that there would be "no threat of great harm to the plaintiffs if the status quo were to be maintained" given the decade-long coexistence between the parties. *Id.* (citation omitted). The same lengthy, peaceable coexistence is present here, and weighs in favor of laches.

### 4.     Factor 4:  Good Faith Ignorance by the Junior User

Rather than addressing whether Synopsys initially adopted its mark in good faith, as this factor demands, OSD spends several pages of its brief arguing that Synopsys engaged in "intentional infringement" and its extension of its famous SYNOPSYS® mark into the field of optical design software "betrays a profound misunderstanding of fundamental principles of trademark law." (Opp. at 10–11.) These assertions miss the point. Properly focused, this factor likewise favors the application of laches.

There appears to be no dispute that when Synopsys initially adopted its SYNOPSYS® mark—at the time of its founding in 1986—Synopsys did so in good faith and without violating any OSD trademark rights. (*See id.* at 10–11.) That alone

resolves the inquiry. Synopsys' opening brief cited *Roseville Fullerton Burton Holdings, LLC v. Socal Wheels, Inc.*, 2016 WL 11750383, at *4 (C.D. Cal. Oct. 11, 2016), where defendants initially adopted their "Discount Wheel Warehouse" mark in good faith and operated in a different geographic market from the senior user, but years later relocated to the senior user's market. (Mot. at 11–12.) As *Roseville* recognized, the relevant question was whether they operated in good faith "when they ***first used*** the 'Discounted Wheel Warehouse' mark," not whether they did so after relocating. *Id.* (emphasis added). Likewise, Synopsys cited *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1110 (9th Cir. 2006) for the proposition that a lengthy coexistence between the parties weighs against a finding of bad faith. (Mot. at 12.) OSD does not distinguish—or even address—this authority, and the same principles establish Synopsys' good faith here.

### 5.   Factor 6:  Extent of Harm Suffered Due to Senior User's Delay

As to this final factor, OSD again aims at the wrong target. As the Ninth Circuit held in *Eat Right Foods*, expenditures undertaken by the junior user after the senior user had constructive knowledge of its potential claim weigh in favor of laches. 880 F.3d at 1119. Even accepting, *arguendo*, OSD's implausible assertion that it "only knew of the scope of Synopsys' infringement in 2024" (Opp. at 14–15), it is undisputed that OSD was on notice of Synopsys' challenged use no later than 2019; in fact, it knew about it years earlier. (*See* Section II, supra.) Synopsys' continued investment in its optical design products and services since that time—which OSD does not dispute in its opposition (*see* Opp. at 14–15)—weighs in favor of applying laches. Moreover, while Synopsys did not specifically plead any degradation of evidence due to OSD's delay in filing suit, it is self-evident that decade-old events will no longer be as fresh in witnesses' minds. In short, that OSD allegedly did not consider its cause of action to be ripe until June 2024 does not undercut Synopsys' reliance on OSD's inaction before that time. This factor accounts for the "detrimental reliance laches seeks to prevent," *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*,

668 F. Supp. 3d 1025, 1044 (C.D. Cal. 2023), and Synopsys' substantial reliance on OSD's inaction while investing and building goodwill in its optical design business supports application of laches here.

Thus, as set forth in the Motion, the undisputed facts weigh in favor of finding OSD's Lanham Act claim barred by laches. (Mot. at 13–14 (collecting cases).)

### D. In the Alternative, Judgment Is Warranted on Other Aspects of OSD's Counterclaims and Defenses

If the Court does not grant judgment on laches and statute of limitations, judgment on three aspects of OSD's counterclaims and defenses is warranted: (1) OSD's Counterclaim 1 for false designation of origin, (2) OSD's request for declaratory relief in the "Prayer for Relief" section of its Counterclaims, and (3) OSD's affirmative defense of unclean hands. (Mot. at 14–21.) OSD does not meaningfully contest Synopsys' showing.

#### 1. OSD's Counterclaim 1 Fails

Judgment should be granted on OSD's Counterclaim 1 because (1) OSD failed to plead that counterclaim with particularity, and (2) Synopsys has not used a "false designation." (Mot. at 15–19.)

As to particularity, OSD admits Rule 9(b) applies to "claims that involve false and fraudulent misrepresentations," but contends this encompasses only "false advertising claim[s]," not false designation or other Lanham Act claims. (Opp. at 19.) OSD is wrong. The heightened pleading standard applies to either type of claim, if based on an alleged false or fraudulent representation. *See, e.g.*, *Julian Bakery, Inc. v. Healthsource Int'l, Inc.*, 2018 WL 1524499, at *6 (S.D. Cal. Mar. 28, 2018) (dismissing both a false designation and a false advertising claim for lack of particularity under Rule 9(b)); *Sparrow Inc. v. Lora*, 2014 WL 12561587 (C.D. Cal. Aug. 5, 2014) (dismissing Lanham Act claim). In purporting to distinguish both cases (Opp. at 19–20), OSD does not address the holdings relied on by Synopsys. True, a plaintiff need not "identify each infringing act" (*id.*), but where it alleges fraudulent

misrepresentation, it must plead some fraud with particularity.

On the merits of particularity, OSD focuses on an alleged misrepresentation that was not made in commerce—but rather from Synopsys to OSD in private. (*Id.* at 20–21.) This statement, even if it were fraudulent, cannot form the basis for a false designation claim because, on its face, it was not made "in commerce"—and OSD has not alleged how it could have misled anyone other than OSD. *See* 15 U.S.C. §1125(a) (requiring "use in commerce" to establish a violation). Moreover, to the extent OSD alleges other, unspecified misrepresentations (Opp. at 21), it has provided no explanation for those statements. As to whether OSD pled that Synopsys used a "false designation" necessary to support a claim for false designation of origin under 15 U.S.C. § 1125(a), OSD attempts to collapse this claim into its discussion of the laches factor governing good faith, citing only to its discussion of Synopsys' defense to trademark infringement under the Lanham Act. (Opp. at 21.) But false designation of origin is a distinct cause of action. As Synopsys explained in its motion, a claim for false designation of origin requires a *falsity* in commerce, and **cannot be brought** "merely because of potential confusion." (Mot. at 17 (citation omitted).) Yet, OSD ignores that fundamental distinction. Indeed, in the laches section of its brief that OSD refers to, only one case discusses a claim for false designation of origin, and in that case, the claim was dismissed. *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, 2015 WL 12731920, at *8–9 (C.D. Cal. Sept. 21, 2015). Put simply, there was nothing false about Synopsys using its SYNOPSYS® mark to describe its own products, and OSD has not identified any falsity in commerce on which its claim can be premised.

### 2. OSD's Request for Declaratory Relief Fails

OSD did not bring a claim under the Declaratory Judgment Act, so it cannot ask that the Court declare "OSD owns valid and subsisting trademark rights in its SYNOPSYS™ mark in the optical design software space that are superior to any trademark rights Synopsys claims in that space." (ECF 42 at 16; Mot. at 19–20.)

1  OSD purports to justify its request by arguing it is a response to "the declaratory relief
2  Synopsys seeks." (Opp. at 21.) But, unlike OSD, Synopsys *did* plead claims under
3  the Declaratory Judgment Act. (FAC ¶¶63–106.) OSD provides no authority for the
4  proposition that one party can request declaratory relief because the other party did.

### 3. OSD's Unclean Hands Defense Fails

6  OSD's unclean hands defense should also be dismissed. OSD failed to allege
7  the required "firm conviction" that Synopsys acted with a fraudulent intent. (Mot. at
8  20–21.) And Synopsys is not asserting any trademark rights in this action, rendering
9  the unclean hands defense unavailable. (*Id.* at 21.) OSD fails to refute either point.

10  As to the first issue, OSD moves the goalposts. Rather than argue that it has
11  pled facts that provide "a firm conviction … that [Synopsys] acted with a fraudulent
12  intent in making the challenged claims" (ECF 39 at 8), OSD contends it alleged
13  Synopsys "willfully and intentionally infringed OSD's rights," and that intentional
14  infringement establishes unclean hands. (Opp. at 15–18.) But that is not the law, and
15  OSD's cited cases do not support its position. For instance, in *M.I.B. Grp. LLC v.*
16  *Aguilar*, the court found unclean hands where "a departing employee beg[an] a new
17  business with a nearly identical name to his previous employer," evidencing an intent
18  to confuse consumers. 2024 WL 3857540, at *20 (C.D. Cal. July 16, 2024). That
19  deliberate misconduct is far afield from the undisputed facts of this case, where
20  Synopsys was already a successful and famous company before acquiring ORA,
21  Synopsys continued using the long-established ORA products' names (e.g., Code V)
22  and only used "Synopsys" to denote that those products came from Synopsys, Inc.,
23  and the parties peacefully coexisted in the market for optical design products and
24  services for nearly 15 years. Similarly, in *Iovino v. AmTrust Fin. Servs., Inc.*, 2025
25  WL 343356, at *3 (D. Nev. Jan. 30, 2025), and *New Penn Fin., LLC v. Riverwalk*
26  *Ranch Master Homeowners Ass'n*, 2018 WL 5621864, at *2 (D. Nev. Oct. 29, 2018),
27  the courts declined to address unclean hands because those cases implicated factual
28  questions not suitable for resolution at the pleading stage. Here, by contrast, judgment

can be granted on OSD's unclean hands defense because OSD has not plausibly pled any facts—disputed or not—that would evidence unclean hands, let alone those "provid[ing] a firm conviction … that [Synopsys] acted with a fraudulent intent." (ECF 39 at 8.)

On the latter point, OSD argues Synopsys acted with unclean hands through its alleged "intentional infringement of ***OSD's*** trademark rights." (Opp. at 18.) But as the Court previously explained, the "defense of unclean hands 'bars relief to a [party] who has dirtied his hands *in acquiring the right presently asserted*.'" (ECF 39 at 7 (emphasis added) (citation omitted); *see also Valentino S.p.A. v. Mario Valentino S.p.A.*, 2021 WL 6882327, at *15 (C.D. Cal. Apr. 9, 2021) (unclean hands must "concern[] 'the getting or using of the trademark rights that [mark owner] was attempting to enforce'").) Here, Synopsys is not asserting any mark—and ***only OSD*** could have acted with unclean hands with respect to "OSD's trademark rights." (Opp. at 18.) OSD offers no authority to support its expansive re-writing of the unclean hands inquiry.

### E.   Leave to Amend Should Not Be Granted

Finally, OSD requests leave to amend. (Opp. at 21.) But leave to amend should be denied if—as here—it would be "futile." *Doe v. Garland*, 17 F.4th 941, 950 (9th Cir. 2021). This motion rests on facts OSD admits or pleads, and given OSD's over 5-year delay in filing suit, there are no additional facts it could allege to "save[] [its] claim[s] from dismissal." *Id.* Moreover, OSD fails to identify what amendments, if any, it would make, which also counsels against granting leave to amend. *Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (leave to amend not required where plaintiff "did not propose any new facts or legal theories for an amended complaint").

### III.   CONCLUSION

Therefore, as set forth in Synopsys' opening brief and above, Synopsys' motion should be granted and leave to amend denied.

| | | |
|---|---|---|
| 1 | Dated: August 25, 2025 | Respectfully Submitted, |
| 2 | | WILLKIE FARR & GALLAGHER LLP |
| 3 | | |
| 4 | | By: */s/ Krista S. Schwartz* |
| | | Krista S. Schwartz |
| 5 | | Barrington Dyer |
| | | Aliza George Carrano (*Pro Hac Vice* |
| 6 | | *pending*) |
| 7 | | Devon W. Edwards (*Pro Hac Vice* |
| | | *pending*) |
| 8 | | Ann N. Hopkins |
| 9 | | Jacob Karim |
| | | Dane Sowers (*Pro Hac Vice pending*) |
| 10 | | |
| 11 | | Attorneys for Plaintiff |
| | | SYNOPSYS, INC. |

13

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS / Case No. 2:24-cv-10515-DSF-JC