# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC., <br><br> Plaintiff, <br><br> v. <br><br> OPTICAL SYSTEMS DESIGN LLC, <br><br> Defendant. <br><br> OPTICAL SYSTEMS DESIGN LLC, <br><br> Counter-Claimant, <br><br> v. <br><br> SYNOPSYS, INC., <br><br> Counter-Defendant. | No. 2:24-cv-10515-DSF-JC <br><br> Order GRANTING Plaintiff and Counter-Defendant Synopsys, Inc.'s Motion for Judgment on the Pleadings (Dkt. 50) |

Plaintiff and Counter-Defendant Synopsys, Inc. moves for judgment on the pleadings. Dkt. 50-1 (Mot.). Optical Systems Design LLC opposes. Dkt. 52 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is GRANTED.

## I. Background

Founded in the 1980s, Synopsys is a software company that operates in the electronic design automation and semiconductor sectors. Dkt. 42 (Answer and Countercls.) ¶ 14.[1] It first registered the mark SYNOPSYS® in 1990. Countercls. ¶ 14; Dkt. 40 (AC) ¶ 83. Synopsys holds dozens of registered trademarks that incorporate the mark SYNOPSYS®. Countercls. ¶ 14. In 2010, Synopsys entered the optical design software sector when it acquired Optical Research Associates (ORA), which produced its CODE V® software product. Id. ¶ 16. Since shortly after 2010 and no later than 2013, Synopsys has marketed CODE V® as originating from Synopsys, including by using its SYNOPSYS® mark in connection with the marketing and sale of CODE V®. Id. ¶¶ 18, 20, 22-27. Synopsys continues to use its mark to promote CODE V® in marketing, promotional, advertising, and related channels and materials. Id. ¶¶ 22, 27.

Since 1976, Optical Systems Design (OSD) has marketed lens design software called SYNOPSYS™, which stands for "SYNthesis of OPtical SYStems." Id. ¶ 10. OSD contends SYNOPSYS™ is an arbitrary mark. Id. OSD's founder, Don Dilworth, developed the SYNOPSYS software and operated OSD until 2019, when he sold the company. Id. ¶ 11. OSD has maintained a website promoting its SYNOPSYS™ software products and services since 2005. Id. ¶ 12. SYNOPSYS™ has become well-known and associated with OSD in the optical design software marketplace. Id.

Both companies operate in the same field and OSD was familiar with ORA and its CODE V® software before Synopsys acquired ORA. Answer ¶ 1. By September 2011, OSD described its product on its website as "The *real* SYNOPSYS. Id.; AC ¶ 45. By May 2013, OSD's website compared OSD's SYNOPSYS™ software with CODE V®, including a presentation describing the major differences between SYNOPSYS and CODE V®. Answer ¶ 1; AC ¶ 45, Exs. 20-21.

---

[1] OSD's counterclaims begin at page 4 of the Answer and Counterclaims, dkt. 42, and are separately numbered.

2

Synopsys is a large company with "greater size and market power" than OSD. Countercls. ¶ 4. Though OSD is "not a large company," it has marketed its SYNOPSYS™ software through advertisements, trade shows, promotional literature, its website, and direct sales. Id. ¶ 12. Synopsys' optical design software directly competes with OSD's SYNOPSYS™ software. Id. ¶ 16.

As early as 2016, OSD sought a business relationship with Synopsys, including the possibility of Synopsys acquiring OSD. Answer ¶ 1; AC ¶ 48. In 2018, Synopsys offered to purchase OSD's common-law trademark. Answer ¶ 1; AC ¶ 51, Ex. 27. During those negotiations, OSD asked Synopsys, "is your intention to market your own software under the name 'SYNOPSYS', or just to ensure that I market my own under a different name?" Answer ¶ 1; AC ¶ 51, Ex. 27. Synopsys responded: "We do not have intention or plan to market any individual product under the name 'Synopsys' now or in the future." Answer ¶ 1; AC ¶ 51, Ex. 27.

In 2020, Synopsys again reached out to OSD to discuss a purchase of OSD's common-law trademark. Answer ¶ 1; AC, Ex. 31. In response, OSD president Dr. Kit Cheong stated that she was open to discussing a possible transfer of the mark and noted that she had identified a "plausible breach" at an event at the University of Arizona in September 2019, where an OSD representative had seen an announcement for a CODE V event that featured "the word 'SYNOPSYS' appear[ing] all in upper case, matching [OSD's] trademark . . . ." Answer ¶ 1; AC, Ex. 31. On June 29, 2024, OSD sent through counsel its first demand letter alleging Synopsys had engaged in the unauthorized use of OSD's common law SYNOPSYS™ trademark. Answer ¶ 1; AC, Ex. 32.

Synopsys filed its Amended Complaint on June 3, 2025, seeking declaratory judgment that any infringement claims by OSD are barred by laches and equitable estoppel and that Synopsys' registered trademarks neither infringe OSD's common law trademark rights nor constitute unfair competition. AC ¶ 13. On June 17, 2025, OSD brought three counterclaims, alleging: (1) false designation of origin in

violation of the Lanham Act; (2) state law common law trademark infringement and unfair competition; and (3) unfair competition under California Business and Professions Code § 17200. Countercls. ¶¶ 31, 37, 38, 44.

## II. Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989); see also Stanley v. Trustees of Cal. State Univ., 433 F.3d 1129, 1133 (9th Cir. 2006) ("Judgement on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."). It must appear beyond doubt that the moving party can prove no set of facts that would entitle it to relief. Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 529 (9th Cir. 1997).

Where the motion for judgment on the pleadings raises the defense of failure to state a claim, the motion is governed by the standards used to assess the sufficiency of the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988). As a general rule, the Court may not consider material beyond the pleadings without converting the motion to a motion for summary judgment.[2] See Fed. R. Civ. P. 12(c); Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 979-80 (9th Cir. 1999). The Court may consider "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

---

[2] In considering this motion, the Court relies on factual allegations contained in OSD's Counterclaims. The Court considers OSD's Answer and the AC only where OSD admits Synopsys' allegations, concedes the authenticity of certain documents, or raises affirmative defenses.

4

subject to judicial notice." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (simplified); Heliotrope Gen., Inc., 189 F.3d at 981, n.18; Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1988). Allegations by the non-moving party must be accepted as true, and allegations of the moving party that have been denied must be deemed false for the purpose of the motion. Hal Roach Studios, 896 F.2d at 1550. However, a court is not required to accept "legal conclusions cast in the form of factual allegations," or "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (simplified) (reviewing ruling under Rule 12(b)(6)). A motion for judgment on the pleadings can resolve an affirmative defense if the pleadings establish the defense. See Jones v. Bock, 549 U.S. 199, 215 (2007) (noting if the allegations in a complaint "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal" under 12(b)(6)); Sams v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013) (reviewing ruling under Rule 12(b)(6)).

## III. Discussion

### A.   Statute of Limitations

Synopsys argues that OSD's state law trademark infringement and Unfair Competition Law (UCL) claims are barred by the four-year statute of limitations. Mot. at 6; Dkt. 48 at 9.[3] The Court may grant a motion for judgment on the pleadings if it is clear from the face of the pleadings that the claim is barred by the applicable statute of limitations. Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

---

[3] Though some courts have applied a two-year statute of limitations for common law trademark claims, Synopsys and OSD both assert that the statute of limitations for OSD's trademark claim is four years. Mot. at 6; Opp'n at 5. The Court agrees. For OSD's claims brought under the Business and Professions Code § 17200, the statute of limitations is "four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208.

5

Synopsys asserts that the allegations in the pleadings and the attached exhibits establish that OSD knew or should have known of the alleged infringing behavior as early as 2013 and no later than 2019. Mot. at 7. Synopsys cites its own marketing literature for CODE V®, which was branded with Synopsys' trademark starting as early as late 2010 and early 2011. Mot. at 10; Countercls. ¶¶ 18, 22. Synopsys also points to OSD's website in 2011 and 2013, which described OSD's software as "The *real* SYNOPSYS" and compared its product with CODE V®, identifying CODE V® as a trademark of Synopsys. Mot. at 10; Answer ¶ 1. Additionally, the companies engaged in direct negotiations for years where they discussed their competing products. Mot. at 4; Answer ¶ 1. Finally, Synopsys cites the email from OSD where Cheong stated that OSD was aware of a "plausible breach" in September 2019. Mot. at 4; Answer ¶ 1 (conceding authenticity of the emails in Exhibit 31 of the AC).

OSD concedes that it was aware of a "plausible breach" in 2019. Opp'n at 4. Nevertheless, it contends that the limitations period did not begin until June 2024 when OSD became aware of a breach significant enough to justify a lawsuit. Opp'n at 4-5. OSD argues that the "plausible breach" in 2019 was sufficient to warrant its investigation of the breach but not to start the limitations period. Opp'n at 5. OSD invokes California's discovery rule, continuing violation doctrine, and continuous accrual rule to excuse its delay in filing suit. Opp'n at 5-7. Key to OSD's argument is its allegation that Synopsys made misrepresentations meant to conceal the infringement when it stated in 2018 acquisition negotiations that it had no future intention to market any individual product as "SYNOPSYS." Opp'n at 6.

    1.    **Discovery Rule**

First, OSD asserts that the statute of limitations did not start running until 2024 under California's discovery rule. Opp'n at 5-6. The discovery rule provides that the limitations period does not begin at the time of the infringement, but is postponed "until the plaintiff discovers, *or has reason to discover*, a cause of action." Aryeh v. Canon

6

Bus. Sols., Inc., 55 Cal. 4th 1185, 1192 (2013) (emphasis added).  A plaintiff "has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements" and has "reason to suspect when he has notice or information of circumstances to put a reasonable person on inquiry."  Norgart v. Upjohn Co., 21 Cal. 4th 383, 397-98 (1999) (simplified).  Upon reason to suspect, the plaintiff must conduct a reasonable investigation of all potential causes of that injury.  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005).  The discovery rule will delay accrual of the statute of limitations only if "the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."  Id. at 803.

The Court finds OSD had reason to suspect a factual basis for its state law claims no later than 2019 when it discovered a "plausible breach."  Even if OSD had been misled by Synopsys' statements in 2018, OSD had sufficient information to put a reasonable person on notice of the infringing behavior by 2019.  The discovery rule does not excuse OSD's failure to conduct an investigation of its potential infringement claims.  Synopsys has continuously used its Synopsys logo on its product literature, website, and marketing for CODE V®.  Countercls. ¶¶ 22, 27.  The alleged infringing activity was therefore discoverable through reasonable investigation once OSD had reason to suspect the infringement.  The discovery rule does not save OSD's claims.

### 2.  Continuing Violations Doctrine

Next, OSD asserts that its claims were tolled under the continuing violations doctrine.  Opp'n at 6.  This doctrine is an equitable exception courts have applied where the injury is the "product of a series of small harms, any one of which may not be actionable on its own."  Aryeh, 55 Cal. 4th at 1197.  OSD argues the doctrine applies because the alleged infringement was a "continuing course of conduct before and within the cited limitations periods."  Opp'n at 6.  OSD cites only one case, Aryeh, suggesting the continuing violations doctrine could apply to its UCL claims.  Id. at 1198.  But there the California Supreme Court declined

7

to apply the continuing violations doctrine because the acts at issue were a series of "discrete, individually actionable alleged wrongs," not the "accumulation of a series of harms." Id.  Similarly, there is no merit to OSD's argument that only in 2024 did the infringement reach an actionable level such that the statute of limitations was tolled until then.  See Opp'n at 6-7.  Once OSD knew of a "plausible breach" in 2019, it should have taken action.  The continuing violations doctrine does not save OSD's claims.

### 3. Continuous Accrual Rule

Finally, OSD invokes California's continuous accrual rule to excuse its delay in filing suit.  Opp'n at 7.  This rule may apply when there is a "continuing or recurring obligation" such that "a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." Aryeh, 55 Cal. 4th at 1198-99.  Here, there was no continuing or recurring obligation giving rise to a new cause of action within the limitations period.  See Aryeh, 55 Cal. 4th at 1200 (applying the continuous accrual rule where the defendant "billed [the plaintiff] on a recurring monthly basis"); State of California ex rel. Metz v. CCC Info. Servs., Inc., 149 Cal. App. 4th 402, 418 (2007) (declining to apply the continuous accrual rule where the "action [did] not involve a recurring obligation" or "periodic payment obligations").  The continuous accrual rule does not apply to OSD's claims, which arise from alleged infringement that was ongoing and continuous for years.  OSD's California claims are time-barred.

## B. Laches

Synopsys argues that OSD's Lanham Act counterclaim is barred by laches.  Mot. at 7.  OSD opposes, arguing that the claim is timely, and equitable considerations weigh against applying laches.  Opp'n at 5-7.

Laches, which imposes an equitable time limitation on a party's right to bring suit, is a valid defense to a Lanham Act claim.  Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).  Although "laches and the statute of limitations are distinct defenses, a laches determination is made with reference to the limitations period

8

for the analogous action at law." Id. "[Courts] analyze the laches defense with a two-step process." Pinkette Clothing, Inc. v. Cosm. Warriors Ltd., 894 F.3d 1015, 1025 (9th Cir. 2018) (quoting La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V., 762 F. 3d 867, 878 (9th Cir. 2014). First, the Court assesses the plaintiff's delay by looking to whether the most analogous state statute of limitations expired before suit was filed. Id. If so, there is a "strong presumption in favor of laches." Id. Because the alleged violations for many Lanham Act claims are ongoing, "the presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period." Jarrow Formulas, 304 F.3d at 837. Second, after determining that a presumption of laches applies, courts "assess the equity of applying laches using the E-Systems factors." Pinkette, 894 F. 3d at 1025.

### 1. Presumption of Laches

In Lanham Act claims, the Ninth Circuit has found the most analogous state statute of limitations to be California's four-year statute of limitations for trademark infringement actions. See Pinkette, 894 F.3d at 1025; Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc., 559 F.3d 985, 990 n.2 (9th Cir. 2009). "[I]n determining the presumption for laches, the limitations period runs from the time the plaintiff knew or should have known about his § 43(a) cause of action." Jarrow Formulas, 304 F.3d at 838; see Pinkette, 894 F.3d at 1025-27 (starting the limitations period when the plaintiff had "constructive notice" of the allegedly infringing activity).

Here, OSD's pleadings establish that OSD knew of a "plausible breach" by September 2019. Answer ¶ 1; AC, Ex. 31. Synopsys' mark has appeared on marketing materials, product literature, and the website for CODE V® since 2011. Countercls. ¶¶ 18, 20, 22-27. OSD knew or should have known of the alleged infringement no later than September 2019. OSD filed its counterclaims more than five years later in June 2025. Therefore, the claims were filed beyond the analogous four-year limitations period—establishing a presumption of laches.

9

### 2. E-Systems Factors

After determining a presumption of laches applies, the Court must "assess the equity of applying laches using the E-Systems factors: '(1) 'strength and value of trademark rights asserted;' (2) plaintiff's diligence in enforcing mark;' (3) 'harm to senior user if relief denied;' (4) 'good faith ignorance by junior user;' (5) 'competition between senior and junior users; and' (6) 'extent of harm suffered by junior user because of senior user's delay.'" Pinkette, 894 F. 3d at 1025 (quoting E-Sys., Inc. v. Monitek, Inc., 720 F.2d 604, 607 (9th Cir. 1983)).

#### a. Strength and Value of Trademark Rights Asserted

A mark's strength is evaluated "on two components: 'the mark's inherent distinctiveness (i.e., its conceptual strength)' and its 'recognition in the market (i.e., its commercial strength)." Harman Int'l Indus., Inc. v. Jem Accessories, Inc., 668 F. Supp. 3d 1025, 1038 (C.D. Cal. 2023), aff'd, No. 23-55774, 2024 WL 4750497 (9th Cir. Nov. 12, 2024), cert. denied, No. 24-1011, 2025 WL 1678997 (U.S. June 16, 2025). "[A]n arbitrary or fanciful mark is the most distinctive" and "[t]he more distinctive a mark, the greater its conceptual strength." M2 Software, Inc. v. Madacy Ent., 421 F.3d 1073, 1080 (9th Cir. 2005). If a mark is conceptually weak, it "can have its overall strength as a mark bolstered by its commercial success." Id. at 1081. Commercial success may be measured "by such factors as extensive advertising, length of exclusive use," and "marketplace recognition." Id. However, "a lack of commercial strength cannot diminish the overall strength of a conceptually strong mark so as to render it undeserving of protection." Id.

OSD argues that its SYNOPSYS™ mark is conceptually strong because it is an arbitrary or fanciful mark.[4] Opp'n at 8; Countercls. ¶

---

[4] In its opposition, OSD states that SYNOPSYS™ is a fanciful mark. Opp'n at 8. In its counterclaims, OSD alleges that SYNOPSYS™ is an arbitrary mark. Countercls. ¶ 10. This discrepancy is immaterial, as both fanciful and

10

10. OSD does not allege or admit facts concerning the conceptual strength of Synopsys' mark. Synopsys contends that its size and market power bolster its commercial strength and, in turn, its mark's overall strength. Mot. at 9; see Countercls. ¶¶ 14, 21. In response, OSD cites its long history of advertising and use in the marketplace to argue that its mark is also commercially strong. Opp'n at 8; Countercls. ¶ 12. While both OSD and Synopsys may be commercially strong within a niche marketplace, the conceptual strength of OSD's mark tilts the first factor against applying laches.

### b. Diligence in Enforcing the Mark

The Ninth Circuit requires an "effective policing effort" that "[a]t the very least, . . . must involve actually contacting the alleged infringer about its use of a trademark." Grupo Gigante SA De CV v. Dallo & Co., 391 F.3d 1088, 1102 (9th Cir. 2004) (finding a lack of diligence where the plaintiff sent a cease-and-desist letter within the limitations period and contacted the defendant multiple times over four years). OSD contends the second factor raises factual disputes that cannot be resolved on this motion. Opp'n at 16. However, OSD alleges no facts in its pleadings to support its diligence between the time it identified a "plausible breach" in 2019 and when its counsel sent its first demand letter in 2024. Id. at 16-17. Instead, OSD repeats its argument that it did not know before 2024 whether the infringement justified the cost of litigation. Id. Because the pleadings do not show any effort by OSD to enforce its trademark rights during the limitations period, the second factor weighs in favor of laches.

### c. Harm to OSD if Relief is Denied

The third factor turns on the "likelihood of confusion" between the two marks. Grupo Gigante, 391 F.3d at 1103-04. Synopsys concedes factual disputes exist regarding the likelihood of confusion, but asserts that the Court need not resolve them. Mot. at 11. OSD argues there is

---

arbitrary marks are considered conceptually strong. See M2 Software, 421 F.3d at 1080.

11

a likelihood of confusion because the two marks are "identical." Opp'n at 10; see Countercls. ¶¶ 17, 19, 21. But OSD alleges no additional facts showing confusion between Synopsys' CODE V® and its SYNOPSYS™ software. Rather, OSD states Synopsys "[misled] the public into falsely believing that either Synopsys' Code V product was associated with OSD, or that OSD's SYNOPSYS™ optical design software products were associated with Synopsys, intentionally causing both forward and reverse confusion in the optical design software marketplace to OSD's damage." Countercls. ¶ 3. OSD cites no instances of actual confusion, confusing actions taken by Synopsys, or anything beyond identical names, to support an inference that consumers are likely to be confused. See id. ¶¶ 3, 17, 19, 29-34.

In evaluating the harm to OSD, the Court also considers OSD's delay in bringing suit. Grupo Gigante, 391 F.3d 1088 at 1104. "[D]elay weakens a claim of likelihood of confusion, because the public may learn to distinguish between similar marks over time, so that any real likelihood of confusion gradually dissipates." Id. at 1103-04 (finding the third factor weighed in favor of laches where the parties had co-existed for nearly a decade, even when some confusion was likely). Synopsys argues OSD's delay in bringing its counterclaims undermines any argument OSD was harmed, citing the two firms' many years of co-existence in the optical design product and services space. Mot. at 11. The Court agrees that there is "no threat of great harm to [OSD] if the status quo [is] maintained." Grupo Gigante, 391 F.3d at 1103. The third factor weighs in favor of applying laches.

        d.    Good Faith Ignorance by Junior User

The fourth factor concerns whether Synopsys acted in bad faith or had prior knowledge of OSD's mark when it adopted use of its mark.[5]

---

[5] In its opposition, OSD confuses the fourth E-Systems factor with the merits of its Lanham Act claim and whether the alleged infringement was "intentional." Opp'n at 10-14. This factor does not analyze whether the infringement was intentional, but whether Synopsys acted in bad faith by adopting the mark seeking benefit from its similarity to OSD's mark. See

12

Id. at 1104. The parties do not dispute that Synopsys first registered its mark in 1990. Opp'n at 1; Countercls. ¶¶ 14. OSD argues that Synopsys "had decades of knowledge of OSD and its senior use" when it began the allegedly infringing activity. Opp'n at 11; see Countercls. ¶ 13. But OSD does not allege Synopsys was aware of OSD when it selected its mark in 1990, nor does it allege facts to support that Synopsys "sought to free-ride on [OSD]'s good will or otherwise take unfair advantage of the similarity between the two companies' marks." Pinkette, 894 F.3d at 1028 (finding good faith ignorance where the junior user did not take unfair advantage of the similarity, even when the junior user had prior knowledge of the senior user's mark); see Fitbug Ltd. v. Fitbit, Inc., 78 F. Supp. 3d 1180, 1194 (N.D. Cal. 2015) (favoring laches where the junior user knew of the senior user's mark before selling products, but not before deciding to adopt its allegedly infringing name).

Synopsys contends its widespread use of its mark confirms it acted in good faith. Mot. at 12; see Countercls. ¶¶ 18, 20, 22-27. Synopsys included its mark in marketing materials for CODE V® for years. Countercls. ¶¶ 22, 27. This "open and notorious use" shows Synopsys did not try to "hide its use of the mark," supporting a finding of good faith. See Pinkette, 894 F.3d at 1019, 1028 (finding good faith where the junior user maintained a website and sold products bearing the allegedly infringing mark); Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n, 465 F.3d 1102, 1110 (9th Cir. 2006) (affirming a finding of good faith where the junior user sold its products with the infringing mark for years with no objection from the senior user). Synopsys' good faith ignorance weighs in favor of applying laches.

---

Pinkette, 894 F.3d at 1028 (analyzing whether the junior user sought to take advantage of the similarity in names); Harman, 668 F.Supp.3d at 1042-43 (considering the junior user's awareness of the mark and any attempts to "free-ride on [the senior user's] good will"); Grupo Gigante, 391 F.3d at 1104 (analyzing whether the junior user had prior knowledge of the senior user when it decided to adopt the allegedly infringing name).

e.  Competition Between Junior and Senior Users

OSD alleges, and this Court must accept as true, that Synopsys' optical design software directly competes with OSD's SYNOPSYS™ software.  Opp'n at 14; Countercls. ¶ 16.  Therefore, the fifth factor weighs against applying laches.  See Grupo Gigante, 391 F.3d at 1104 (finding the fifth factor weighed against laches when the parties both sold groceries to a broad customer base in the same geographic region).

f.  Extent of Harm Suffered by Junior User Because of Senior User's Delay

The sixth and final factor concerns the prejudice suffered by Synopsys because of OSD's delay in bringing suit.  Id. at 1105.  "[A] defendant can make the required showing of prejudice by proving that it has continued to build a valuable business around its trademark during the time that the plaintiff delayed the exercise of its legal rights."  Id.  Synopsys argues that harm is substantial because, during OSD's delay, Synopsys continued to invest in its optical design software business.  Mot. at 13.  The facts OSD admits in its answer and those it alleges in its counterclaims support continued investment by Synopsys.[6]  OSD admits Synopsys "continues to use" its mark to promote CODE V® and has "continuously associated its SYNOPSYS® marks" with CODE V® in "marketing, promotional, advertising, and related channels and materials. . ."  Countercls. ¶¶ 22, 27.  Further, OSD does not contend that Synopsys has not been prejudiced by its delay.[7]  Therefore, the sixth factor weighs slightly in favor of applying laches.

---

[6] It is Synopsys' burden to show harm suffered due to OSD's delay, but the Court is limited in what information it may consider on a Rule 12(c) motion.  The Court may not rely on facts alleged in the AC but denied in OSD's answer without converting the motion into one for summary judgment.  See Fed. R. Civ. P. 12(d).

[7] In opposition to the instant motion, OSD merely restates its argument for a limitations period starting in 2024.  Opp'n at 14-15.

14

Because four of the six E-Systems factors support the application of laches, the analysis "validates the strong presumption of laches created by [OSD's] delaying past the expiration of the most analogous state statute of limitations." Pinkette, 894 F.3d at 1028 (affirming the application of laches where at least four factors favored laches); see Harman, 668 F. Supp. 3d at 1044 (finding a Lanham Act claim time-barred where four factors weighed in favor of laches); see also Hollis v. Render, No. CV 24-02292-MWF (BFMX), 2025 WL 2029815 (C.D. Cal. July 21, 2025) (granting motion to dismiss a claim as untimely when four of the six factors weighed in favor of applying laches).

### 3. Unclean Hands

OSD contends the doctrine of unclean hands precludes Synopsys from asserting laches. Opp'n at 15. "A party with unclean hands may not assert laches." Pinkette, 894 F.3d at 1029 (quoting Jarrow Formulas, 304 F.3d at 841). "[O]nly a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands." Id. Trademark infringement is "willful" when the defendant's actions are "willfully calculated to exploit the advantage of an established mark." DC Comics v. Towle, 802 F.3d 1012, 1026 (9th Cir. 2015). "[A] plaintiff cannot ordinarily show unclean hands . . . simply by alleging that the defendant made claims knowing that they were false." Jarrow Formulas, 304 F.3d at 841. Instead, the allegations must leave the court with "a firm conviction that the defendant acted with a fraudulent intent in making the challenged claims." Id. at 842.

OSD argues Synopsys has unclean hands because Synopsys misled OSD into believing that Synopsys was not using its mark in association with CODE V®. Opp'n at 16; Answer ¶ 5-6. OSD alleges that Synopsys intentionally engaged in bad faith negotiations to purchase OSD's mark while, unbeknownst to OSD, Synopsys actively marketed CODE V® with its Synopsys name. Opp'n at 16; Answer ¶ 5-6. OSD also asserts that Synopsys willfully and intentionally infringed on

15

OSD's trademark rights to benefit from and overwhelm OSD's goodwill associated with its mark.  Opp'n at 16-17; Answer ¶ 6.

The factual allegations in OSD's pleadings do not provide a sufficient basis for an unclean hands defense.[8]  The most OSD alleges is that Synopsys "mis[led] OSD as to its intentions and conduct regarding OSD's SYNOPSYS mark" when Synopsys stated in 2018 that it "[did] not have intention or plan to market any individual product under the name 'Synopsys' now or in the future."[9]  Opp'n at 16; Answer ¶ 6.  The statement on its own does not leave the Court with a firm conviction that Synopsys acted with fraudulent intent to establish the level of culpability required for unclean hands.  OSD alleges no other facts to support an inference that Synopsys willfully sought to exploit the advantage of OSD's mark.  See Countercls. ¶¶ 14-18, 20-28.[10]

---

[8] OSD asserted the affirmative defense of unclean hands in its answer to Synopsys' complaint seeking declaratory judgment on the issue of laches.  Answer ¶¶ 5-6; see AC ¶ 64.  Courts within the Ninth Circuit disagree on whether the fair notice standard or the heightened pleading standard articulated in Iqbal and Twombly applies to affirmative defenses.  See Gomez v. J. Jacobo Farm Lab. Contractor, Inc., 188 F. Supp. 3d 986, 991-93 (E.D. Cal. 2016) (collecting cases).  If OSD, following the fair notice standard, omitted facts from its answer and counterclaims that would have supported an unclean hands defense, it may allege those additional facts in an amended pleading.  Loi Nguyen v. Durham Sch. Servs., L.P., 358 F. Supp. 3d 1056 (C.D. Cal. 2019) (applying the fair notice standard to affirmative defenses and granting leave to amend stricken affirmative defenses).

[9] The parties dispute the meaning of this statement and whether Synopsys was providing any assurance that it would not use its SYNOPSYS® trademark in association with CODE V®.  Opp'n at 3; Dkt. 54 (Reply) at 6.  Under either interpretation, the statement does not leave the Court with the firm conviction of fraudulent intent required to show unclean hands.

[10] OSD argues that Synopsys "intentionally" used its mark in connection with CODE V®.  Opp'n at 16; Answer ¶ 6.  The doctrine of unclean hands requires "wrongfulness, willfulness, bad faith, or gross negligence," not intent.  Jarrow Formulas, 304 F.3d at 842.

16

Therefore, the doctrine of unclean hands does not preclude the application of laches to bar OSD's Lanham Act claim.

## C.    Leave to Amend

Pursuant to Rule 15(a), leave to amend a complaint that has been dismissed should be freely granted.  "However, the district court may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892 (9th Cir. 2010) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).

The Court has determined that OSD's state law trademark infringement and UCL claims are barred by the four-year statute of limitations.  Therefore, future amendments would be futile and leave to amend will not be granted.

The Court is not persuaded leave to amend OSD's Lanham Act claim would be futile, or that it would unduly prejudice Synopsys.  Therefore, the Court grants OSD leave to amend the Lanham Act false designation of origin counterclaim and the unclean hands affirmative defense in its answer.

## IV. Conclusion[11]

For the foregoing reasons, Synopsys, Inc.'s Motion for Judgment on the Pleadings is GRANTED.  The Court GRANTS the motion as to

---

[11] All three of OSD's counterclaims are resolved by the applicable statutes of limitations or laches.  Therefore, the Court does not address the alternative issues Synopsys raised in its motion, including that (1) OSD does not state a claim for false designation of origin, and (2) OSD's request for declaratory relief is improper.  Mot. at 14-20.  If OSD decides to amend, it should consider Synopsys' arguments on these issues.

17

OSD's counterclaim for false designation of origin in violation of the Lanham Act with leave to amend if it can do so consistent with Rule 11 of the Federal Rules of Civil Procedure; and GRANTS the motion as to OSD's counterclaims for state law common law trademark infringement and unfair competition under California Business and Professions Code § 17200, without leave to amend. An amended complaint may be filed and served no later than October 23, 2025. Failure to file by that date will waive the right to do so. The Court does not grant leave to add new defendants or new claims. Leave to add new defendants or new claims must be sought by a separate, properly noticed motion. OSD must submit a redlined version of any amended counterclaim to the chambers email.

   IT IS SO ORDERED.

Date: October 2, 2025

                                    Dale S. Fischer
                                    United States District Judge