**WILLKIE FARR & GALLAGHER LLP**
Krista S. Schwartz (Bar No. 303604)
  kschwartz@willkie.com
Barrington Dyer (Bar No. 264762)
  bdyer@willkie.com
Ann N. Hopkins (Bar No. 325474)
  ahopkins@willkie.com
Jacob Karim (Bar No. 340376)
  jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

Aliza George Carrano (*Pro Hac Vice* pending)
  acarrano@willkie.com
Dane Sowers (*Pro Hac Vice* pending)
  dsowers@willkie.com
1875 K Street, N.W.
Washington, DC  20006
Telephone: (202) 303-1000

Devon W. Edwards (*Pro Hac Vice* pending)
  dedwards@willkie.com
787 Seventh Ave.
New York, NY 10019
Telephone: (212) 728-8000

Attorneys for Plaintiff
SYNOPSYS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC., | Case No. 2:24-cv-10515-DSF-JC |
| Plaintiff, | Judge:  Hon. Dale S. Fischer<br>Ctrm:   7D |
| v. | DATE:  December 29, 2025<br>TIME:   1:30 p.m. |
| OPTICAL SYSTEMS DESIGN LLC, | |
| Defendant. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS** |
| OPTICAL SYSTEMS DESIGN LLC, | |
| Counter-Claimant, | |
| v. | |
| SYNOPSYS, INC., | |
| Counter-Defendant. | |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................... 1

II.    BACKGROUND ...................................................................... 1

     A.    Procedural History .......................................................... 1

     B.    Admitted Facts .............................................................. 4

III.   LEGAL STANDARD .............................................................. 6

IV.   ARGUMENT............................................................................ 7

     A.    OSD's Amended Counterclaim Does Not Allege New Facts that Overcome the Court's Finding of Laches ................................. 8

         1.    Factor 1:  Strength and Value of Trademark Rights Asserted.... 8

         2.    Factor 2:  Diligence in Enforcing the Mark............................. 8

         3.    Factor 3:  Harm to OSD if Relief Is Denied .............................. 9

         4.    Factor 4:  Good Faith Ignorance by Junior User ...................... 10

         5.    Factor 5:  Competition Between Junior and Senior Users ....... 12

         6.    Factor 6:  Extent of Harm Suffered by Junior User Because of Senior User's Delay ................................................................. 12

         7.    The Factors Collectively Support Application of Laches ........ 14

     B.    OSD Does Not Sufficiently Allege an Unclean Hands Defense ........ 14

     C.    The Facts Set Forth in Synopsys' Answer Also Compel Dismissal.... 17

     D.    Synopsys Has Not Used a False Designation ................................... 20

     E.    Leave to Amend Should Not Be Granted ......................................... 20

V.    CONCLUSION ........................................................................ 21

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................11, 13, 16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................11, 13, 16

*Carvalho v. Equifax Info. Servs., LLC,*
    629 F.3d 876 (9th Cir. 2010)...............................................................................20

*Chavez v. Smurfit Kappa N. Am. LLC,*
    No. 18-cv-5106, 2018 WL 8642837 (C.D. Cal. Oct. 17, 2018)...............6, 17, 18

*Cholla Ready Mix, Inc. v. Civish,*
    382 F.3d 969 (9th Cir. 2004)..................................................................................7

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014).................................................................11, 13, 16

*Gamez v. Summit Nats. Inc.,*
    No. 22-cv-5894, 2022 WL 17886027 (C.D. Cal. Oct. 24, 2022)....................6, 7

*Grupo Gigante SA De CV v. Dallo & Co.,*
    391 F.3d 1088 (9th Cir. 2004).....................................................................*passim*

*Harman Int'l Indus., Inc. v. Jem Accessories, Inc.,*
    668 F. Supp. 3d 1025 (C.D. Cal. 2023).................................................................8

*Hedrick v. Cnty. of Ventura,*
    No. 14-cv-4506, 2014 WL 12967548 (C.D. Cal. Nov. 10, 2014)...............11, 13

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,*
    304 F.3d 829 (9th Cir. 2002) .......................................................................3, 15

*Kobashi v. Sentry Ins.,*
    No. 20-cv-718, 2021 WL 1231425 (C.D. Cal. Mar. 2, 2021) ...........................18

*Miller v. Glenn Miller Prods., Inc.,*
    454 F.3d 975 (9th Cir. 2006) ..............................................................................16

*Orly Int'l, Inc. v. World Amenities, Inc.,*
    No. 25-cv-2154, 2025 U.S. Dist. LEXIS 152429 (C.D. Cal. Aug. 6,
    2025).....................................................................................................................11

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.,*
    894 F.3d 1015 (9th Cir. 2018)......................................................................*passim*

*Pratt v. Hawaii,*
    No. 17-cv-00599, 2019 WL 1548570 (D. Haw. Apr. 9, 2019) ..........................18

ii

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*,
    445 F. Supp. 3d 139 (N.D. Cal. 2020)................................................18

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamer Ass'n*,
    465 F.3d 1102 (9th Cir. 2006) ........................................................12

*Wade-James v. Genzyme Corp.*,
    No. 24-cv-1364, 2025 WL 438686 (C.D. Cal. Feb. 7, 2025)............................21

**Statutes**

Cal. Bus. & Prof. Code § 17200................................................................2

**Rules**

Fed. R. Civ. P. 10(c).......................................................................18

Fed. R. Civ. P. 11 .........................................................................1

Fed. R. Civ. P. 12(c)..............................................................6, 17, 18

Fed. R. Civ. P. 12(b)(6)...................................................................6

MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR
JUDGMENT ON THE PLEADINGS / Case No. 2:24-cv-10515-DSF-JC

## I.    INTRODUCTION

Last month, this Court dismissed all of OSD's counterclaims as untimely. (ECF 57.)  As the Court recognized, OSD was—by its own admission—aware of Synopsys' use of its SYNOPSYS® mark in connection with optical design software no later than 2019, yet waited *years* to enforce any supposed trademark rights.  (*Id.* at 7.)  Accordingly, the Court found OSD's state-law counterclaims were barred by the statute of limitations and OSD's Lanham Act claim was barred by laches.  (*Id.* at 17–18.)  Although the Court granted leave to amend the Lanham Act claim "if [OSD] can do so consistent with Rule 11 of the Federal Rules of Civil Procedure" (*id.*), OSD's amendments (ECF 59 at 4–17, "Amended Counterclaim") still fail to state a plausible claim to relief.  The Amended Counterclaim should now be dismissed with prejudice.

OSD's Amended Counterclaim shares the deficiencies of its original counterclaims.  Most notably, OSD does not allege that it acted with reasonable diligence after discovering what it termed a "plausible breach" of its trademark rights, and thus cannot overcome the "strong presumption of laches" created by the admitted facts in this case.  (*See* ECF 57 at 15.)  And, like its original counterclaims, OSD's amended pleading "do[es] not provide a sufficient basis for an unclean hands defense." (*Id.* at 16.)  Nor could it, as OSD itself pleads that Synopsys' use of its own SYNOPSYS® mark on optical design software was open and notorious for nearly *14 years* before this case began.  Because it cannot controvert these facts, OSD's amended pleading has nothing to offer beyond threadbare, conclusory allegations that cannot carry its claims past the Rule 12 stage.

OSD has failed twice to state a claim to relief because it cannot do so.  This case should therefore end here, with judgment granted to Synopsys.

## II.    BACKGROUND

### A.    Procedural History

After Synopsys brought this action for declaratory judgment of laches, equitable estoppel and no trademark infringement, OSD originally asserted three

1

counterclaims against Synopsys:  (1) false designation of origin under the Lanham Act; (2) common law trademark infringement; and (3) unfair competition under Cal. Bus. & Prof. Code § 17200.  (*See* ECF 42.)  After answering the counterclaims, Synopsys filed a Motion for Judgment on the Pleadings.  (ECF 50.)  In that motion, Synopsys argued that all of OSD's counterclaims were untimely, as the Lanham Act counterclaim was barred due to laches, and the state law claims were barred under the applicable statutes of limitations.  (ECF 50-1 at 5–14.)  Synopsys likewise argued that OSD failed to plausibly allege the affirmative defense of unclean hands because it failed to allege that Synopsys acted with fraudulent intent.[1]  (*Id.* at 20–21.)

On October 2, 2025, the Court granted Synopsys' motion, dismissing all three counterclaims—the state law claims with prejudice—and granting OSD leave to amend only its Lanham Act counterclaim.  (ECF 57 at 17–18.)  In dismissing the state law counterclaims, the Court recognized that "OSD concedes that it was aware of a 'plausible breach' in 2019," and as a result, "it should have taken action" at that time.  (*Id.* at 6, 8.)  Applying a four-year statute of limitations, the Court rejected OSD's arguments concerning the discovery rule, continuing violations doctrine and continuous accrual rule, and held that both state-law claims were time barred.  (*Id.* at 5–8, 17.)

As to OSD's Lanham Act counterclaim, the Court found that a "presumption of laches" applied because "the claims were filed beyond the analogous four-year limitations period."  (*Id.* at 9.)  The Court then analyzed the *E-Systems* factors to "assess the equity of applying laches."  (*Id.* at 10 (quoting *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018)).)  The Court found that "four of the six *E-Systems* factors support[ed] the application of laches," which

---

[1] Synopsys raised two additional arguments, which the Court did not reach: (1) OSD failed to state a claim for false designation of origin, and (2) OSD raised an improper request for declaratory relief in its counterclaims.  (ECF 50-1 at 14–20.)

"validate[d] the strong presumption of laches created by [OSD's] delaying past the expiration of the most analogous state statute of limitations." (*Id.* at 15 (quoting *Pinkette*, 894 F.3d at 1028); *see also id.* at 10–14.)

The Court also rejected OSD's argument that "the doctrine of unclean hands precludes Synopsys from asserting laches." (*Id.* at 15.) As the Court explained, for unclean hands to apply, "the allegations must leave the court with 'a firm conviction that the defendant acted with a fraudulent intent in making the challenged claims.'" (*Id.* (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 842 (9th Cir. 2002)).) The Court found that the allegations set forth in OSD's Counterclaims did not "leave the Court with a firm conviction that Synopsys acted with fraudulent intent to establish the level of culpability required for unclean hands." (*Id.* at 16.)

On October 23, 2025, OSD filed its Amended Counterclaim, asserting a single counterclaim for trademark infringement under the Lanham Act. (ECF 59 at 4–17.) OSD's Amended Counterclaim failed to allege any new facts relevant to either the laches analysis or OSD's unclean hands defense. Instead, OSD restated its original counterclaim while adding a handful of conclusory allegations that directly track the language of the Court's Order. (*Compare generally* ECF 59 *with* ECF 42.) By way of example, in response to the Court's finding that "OSD does not allege Synopsys was aware of OSD when it selected its mark in 1990, nor does it allege facts to support that Synopsys 'sought to free-ride on [OSD]'s good will or otherwise take unfair advantage of the similarity between the two companies' marks'" (ECF 57 at 13), OSD added a bare allegation that "Synopsys was aware of OSD and its SYNOPSYS™ mark when it first selected its mark, and it selected that mark to free-ride on OSD's goodwill and otherwise take advantage of the similarity between the two companies' marks." (Amended Counterclaim ¶16; *compare* ECF 57 at 14 *with* Amended Counterclaim ¶22; *compare* ECF 57 at 13 *with* ECF 59 Answer ¶2.)

MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR
JUDGMENT ON THE PLEADINGS / Case No. 2:24-cv-10515-DSF-JC

### B.    Admitted Facts

As set forth in Synopsys' initial Motion for Judgment on the Pleadings (ECF 50-1), this motion rests on the following undisputed facts:

Synopsys is a global leader in the software industry.  Shortly after its founding in 1986, Synopsys registered its name as the now-incontestable SYNOPSYS® trademark.  (ECF 40, "FAC," ¶1; Amended Counterclaim ¶14.)  To this day, Synopsys uses the mark SYNOPSYS® in connection with a wide variety of products including, as relevant to this case, optical design products such as CODE V®.  (FAC ¶¶31–37; Amended Counterclaim ¶18.)

In 2010, Synopsys acquired Optical Research Associates ("ORA") and its optical design products, including CODE V®.  (Amended Counterclaim ¶3.) Synopsys began openly using its SYNOPSYS® mark in connection with CODE V® and ORA's other optical design products shortly thereafter.  (Amended Counterclaim ¶¶18, 23–27.)  For example, starting in late 2010, Synopsys "branded all new Code V® product literature with its SYNOPSYS® trademark."  (*Id.* ¶18.)  Similarly, Synopsys used its SYNOPSYS® mark on the "Optical Solutions" section of its website by July 2013, and in YouTube videos promoting CODE V® by 2015.  (*Id.* ¶¶24–27, Exs. 1–3.)

OSD was founded by Don Dilworth, who promoted and sold an optical lens design software product called SYNOPSYS™.  (*Id.* ¶11.)  Mr. Dilworth sold his SYNOPSYS™ software until he sold his business to Kit Cheong in 2019.  (*Id.* ¶11; FAC, Ex. 32 at 1.)    During the period Mr. Dilworth owned OSD and its SYNOPSYS™ trademark, he was aware of Synopsys' use of its SYNOPSYS® mark in connection with optical design software.  As OSD admits, by 2011, the OSD website referred to its software product as "[t]he *real* SYNOPSYS," distinguishing its offerings from those of Synopsys.  (FAC ¶45; FAC, Ex. 19; ECF 59, Answer ¶1.) And in June 2018 Mr. Dilworth told Synopsys that his "trademark is confusingly similar to [Synopsys'] company name," and proposed that the "solution" to any such

4

confusion was "for [him] to agree to cease using that mark" after a transition period. (FAC, Ex. 31 at 1.)

As further detailed in Synopsys' Answer to OSD's Amended Counterclaim, OSD knew Synopsys was using its SYNOPSYS® mark in connection with optical design software long before 2018. Mr. Dilworth, who ran OSD as a "one-man shop" before selling the business in 2019, attended the same optical industry trade shows as Synopsys in at least 2012, 2013, 2016, 2017 and 2019, where he "of course … would have seen" Synopsys selling Code V®. (*See* ECF 60 ¶¶2, 11 (quoting ECF 60-1 at 25:24–26:4, 33:1–8, 51:20–52:19, 62:1–67:2, 69:25–71:24, 72:4–73:19, 75:10–77:7, 84:11–87:1).) At these trade shows, Synopsys had booths advertising its products using "both the name Code V, plus the SYNOPSYS logo," and Mr. Dilworth would "frequently" "stop[] in and talk[] to some of the Synopsys, Inc., people" in those booths. (*Id.*) Mr. Dilworth also possessed Code V® documentation, dated December 2011, which bore the SYNOPSYS® logo and trademark. (*Id.* ¶18 (quoting ECF 60-1 at 42:18–47:8, 51:20–52:6).) And, knowing these facts, Mr. Dilworth affirmatively chose not to take any action against Synopsys before he sold the business in 2019, describing the situation as "a bag of worms [he] didn't want to get into." (ECF 60 ¶18 (citing ECF 60-1 at 52:13–19).)

Accordingly, Synopsys and OSD coexisted peaceably throughout Mr. Dilworth's ownership of OSD and the two companies repeatedly corresponded about the prospect of a partnership or a business transaction between them. In 2017, Synopsys and OSD began negotiations for the sale of either OSD's entire business or its rights in the SYNOPSYS™ mark. (Amended Counterclaim ¶20; ECF 60 ¶20.) Ultimately, the negotiations were unsuccessful, and Ms. Cheong purchased OSD. (ECF 59, Answer ¶1; FAC ¶52; FAC, Ex. 30.)

Shortly after Ms. Cheong acquired OSD in February 2019, Synopsys contacted her about potentially purchasing the SYNOPSYS™ trademark. (FAC, Ex. 30; ECF 59, Answer ¶1 (admitting email's authenticity)).) At that time, Ms. Cheong asked that

the parties "touch base again around [the] summer." (FAC, Ex. 30.)  In July 2020, in response to a follow-up communication from Synopsys, Ms. Cheong informed Synopsys about a "plausible breach" of OSD's trademark rights based on a flyer that OSD discovered during a visit to the University of Arizona in September 2019.  (FAC, Ex. 31; ECF59, Answer ¶1 (admitting email's authenticity).)  Specifically, she saw that "the word 'SYNOPSYS' appeared all in upper case, matching our trademark." (FAC ¶55.)  Ms. Cheong's email confirms that OSD was fully aware of a potential cause of action by September 2019 at the latest.

However, OSD did not pursue the issue further until June 2024—nearly five years later—when it sent a demand letter alleging that Synopsys "knowingly infringed on OSD's trademark for many years."  (FAC, Ex. 32 at 1; ECF 42, Answer ¶1 (admitting letter's authenticity).)  OSD then waited another year, until June 17, 2025, to bring suit when it filed its original counterclaims in this action.  (ECF 42).

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).  Judgment on the pleadings should be granted when, "taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  *Gamez v. Summit Nats. Inc.*, No. 22-cv-5894, 2022 WL 17886027, at *2 (C.D. Cal. Oct. 24, 2022) (citation omitted).  In other words, "the standard for a Rule 12(c) judgment on the pleadings is essentially the same as for a Rule 12(b)(6) motion."  *Id.*

Under that standard, "[a]llegations by the non-moving party must be accepted as true, and allegations of the moving party that have been denied must be deemed false for the purpose of the motion."  *Id.*  "In considering a Rule 12(c) motion, the court should review 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'"  *Chavez v. Smurfit Kappa N. Am. LLC*, No. 18-cv-5106,

2018 WL 8642837, at *2 (C.D. Cal. Oct. 17, 2018) (citation omitted). However, in considering the facts alleged by the non-moving party, the court need not accept allegations that rest on "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Gamez,* 2022 WL 17886027, at *2 (quoting *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004)).

## IV. ARGUMENT

Judgment on the pleadings should be granted because OSD did not allege any additional facts that could overcome the Court's findings in its earlier Order. Instead, OSD's Amended Counterclaim alleges that OSD was misled because Synopsys "conceal[ed]" its use of the SYNOPSYS® mark in connection with optical design software. (ECF 59, Amended Counterclaim ¶2.) To that end, OSD claims that as of 2018, OSD did not know "the true facts that Synopsys was already branding its Code V product with its Synopsys mark" (*id.* ¶¶18–19), and that Synopsys "lull[ed] OSD into a false sense of security" that "caus[ed] it to delay talking [sic] legal action" (*id.* ¶22). Even if the Court were to take those conclusory allegations as true—and it need not do so—they are not enough to state a claim to relief.

By its own admission, OSD knew, more than four years before it brought its counterclaim, of Synopsys' accused use of the SYNOPSYS® mark. (*See*, *e.g.*, Amended Counterclaim ¶22; *see also* ECF 52 at 3.) OSD also admits that Synopsys' use was open and notorious (Amended Counterclaims at ¶¶23–28), meaning OSD could have easily discovered the use with reasonable diligence. And, OSD "alleges no other facts to support an inference that Synopsys willfully sought to exploit the advantage of OSD's mark." (ECF 57 at 16.) As the Court has already found—and should find again—an analysis of the undisputed facts "validates the strong presumption of laches created by OSD's delaying past the expiration of the most analogous state statute of limitations." (*Id.* at 15.) Likewise, nothing added to the Amended Counterclaim is enough to "leave the Court with a firm conviction that Synopsys acted with fraudulent intent to establish the level of culpability required for

7

unclean hands." (*Id.* at 16.)  OSD's Counterclaim should be dismissed, this time with prejudice.

### A.   OSD's Amended Counterclaim Does Not Allege New Facts that Overcome the Court's Finding of Laches

Although OSD now alleges it was misled by Synopsys *prior to* 2019 (*see generally* Amended Counterclaim), it does not advance any allegations that refute this Court's finding that "OSD had sufficient information to put a reasonable person on notice of the infringing behavior *by 2019*."  (ECF 57 at 7 (emphasis added).) Accordingly, the "strong presumption in favor of laches" applies.  *Pinkette*, 894 F.3d at 1025.  OSD's new allegations also do not upset this Court's analysis of the *E-Systems* factors which "validates the strong presumption of laches." (ECF 57 at 15.)

#### 1.   Factor 1:  Strength and Value of Trademark Rights Asserted

The first laches factor considers the mark's "conceptual strength" and its "commercial strength."  (*Id.* at 10 (quoting *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, 668 F. Supp. 3d 1025, 1038 (C.D. Cal. 2023)).)  The Court previously held that, "[w]hile both OSD and Synopsys may be commercially strong within a niche marketplace, the conceptual strength of OSD's mark tilts the first factor against applying laches." (*Id.* at 11.)  Accordingly, the analysis of this factor remains unchanged.

#### 2.   Factor 2:  Diligence in Enforcing the Mark

The second laches factor considers the mark owner's efforts to "actually contact[] the alleged infringer about its use of a trademark."  (ECF 57 at 11 (quoting *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1102 (9th Cir. 2004)).)  As the Court recognized, "OSD alleges no facts in its pleadings to support its diligence between the time it identified a 'plausible breach' in 2019 and when its counsel sent its first demand letter in 2024." (*Id.*)  OSD's Amended Complaint is equally deficient.

OSD attempts to overcome this finding by alleging that it was "lull[ed] into a false sense of security [that] caus[ed] it to delay talking [sic] legal action." (Amended

8

Counterclaim ¶22.)  But this assertion is both unsupported by any well-pled facts and irreconcilable with OSD's prior argument that "it did not know before 2024 whether the infringement justified the cost of litigation."  (ECF 57 at 11 (citing ECF 52 at 16–17).)  In any event, OSD's amendment does not address the key question under this factor:  whether OSD attempted to "actually contact[] the alleged infringer about its use of a trademark."  *See Grupo Gigante*, 391 F.3d at 1102.  Indeed, regardless of whether OSD "belie[ved] that the parties would be able to settle their differences without litigation" (Amended Counterclaim ¶22), it unequivocally knew its claim had accrued and yet failed to act for years.  This evinces a lack of diligence.

The relevant facts are as clear and undisputed as they were last month:  OSD discovered a "plausible breach" of its trademark rights no later than September 2019, but only raised the issue a year later in response to a communication *from Synopsys*. (FAC, Ex. 31; *see also id.*, Ex. 30.)  OSD then went silent and remained dormant for four more years.  (ECF 60 ¶22, Ex. 2 at 4–5 (admitting that "between July 10, 2020 [the date of Ms. Cheong's responsive email] and June 20, 2024, OSD did not contact Synopsys regarding any alleged infringement of its SYNOPSYS™ trademark").)  It did not file any claim until June 17, 2025—nearly **six years** after discovering that "plausible breach" and nearly **15 years** after Synopsys first began openly using its SYNOPSYS® mark in connection with the Code V® optical design software.  (*See* ECF 57 at 11.)  Accordingly, the result of this factor is unchanged:  "Because the pleadings do not show any effort by OSD to enforce its trademark rights during the limitations period, the second factor weighs in favor of laches."  (ECF 57 at 11.)

### 3.    Factor 3:  Harm to OSD if Relief Is Denied

The third laches factor considers "the 'likelihood of confusion' between the two marks," as well as "OSD's delay in bringing suit."  (*Id.* at 11–12 (citing *Grupo Gigante*, 391 F.3d at 1103–04).)  On this issue, the Court previously recognized that "OSD cites no instances of actual confusion, confusing actions taken by Synopsys, or anything beyond identical names, to support an inference that consumers are likely to

1   be confused." (*Id.* at 12 (citation omitted).)    Likewise, OSD's Amended

2   Counterclaim offers no new allegations that consumers have ever been, or are likely

3   to be, confused between Synopsys' and OSD's offerings. (*Compare generally* ECF

4   59 (Amended Counterclaim) *with* ECF 42 (Counterclaims).)    OSD also offers no

5   allegations to disturb the Court's conclusion that there is "no threat of great harm to

6   [OSD] if the status quo [is] maintained." (ECF 57 at 12 (quoting *Grupo Gigante*, 391

7   F.3d at 1103).)  Accordingly, the result under this factor remains the same: "The third

8   factor weighs in favor of applying laches." (*Id.*)

9               **4.    Factor 4:  Good Faith Ignorance by Junior User**

10          The fourth factor considers "whether Synopsys acted in bad faith or had prior

11   knowledge of OSD's mark when it adopted use of its mark." (*Id.* at 12–13 (citing

12   *Grupo Gigante*, 391 F.3d at 1104).)  The Court previously recognized that "OSD does

13   not allege Synopsys was aware of OSD when it selected its mark in 1990, nor does it

14   allege facts to support that Synopsys 'sought to free-ride on [OSD]'s good will or

15   otherwise take unfair advantage of the similarity between the two companies'

16   marks.'" (*Id.* at 13 (quoting *Pinkette*, 894 F.3d at 1028).)  That was the only plausible

17   conclusion that could be drawn from the pleadings, as OSD acknowledges that

18   Synopsys began operating in an entirely different market than OSD and did not begin

19   selling competing optical design software until Synopsys acquired ORA in 2010.

20   (Amended Counterclaim ¶2.)    And, by its own admission, OSD is "not a large

21   company." (*Id.* ¶13.)

22          Nonetheless, in response to the Court's finding, OSD's Amended Counterclaim

23   now alleges that Synopsys knew of "OSD's SYNOPSYS™ mark beginning no later

24   than 1989," and Synopsys selected its mark "to free-ride on OSD's goodwill and

25   otherwise take advantage of the similarity between the two companies' marks."

26   (Amended Counterclaim ¶¶2, 16.)  But OSD offers no ***factual basis*** whatsoever to

27   suggest that either of those allegations are true, or even plausible.  Instead, OSD

28   simply regurgitates the words of the Court's order in an effort to avoid dismissal.

(*Compare id. with* ECF 57 at 13.)  "As such, the allegations are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

As the Supreme Court has held, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim to relief. *Iqbal*, 556 U.S. at 678  (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 (9th Cir. 2014) (declining to accept "conclusory assertions" as true "[a]bsent factual support" for them).  Rather, the *Iqbal/Twombly* standard requires a party to plead "enough factual matter (taken as true)" to "raise a reasonable expectation that discovery will reveal evidence" supporting the claim.  *Twombly*, 550 U.S. at 556. Conclusory allegations, "without some further factual enhancement," fall "short of the line between possibility and plausibility of 'entitle[ment] to relief,'" the latter of which is needed to survive dismissal.  *See id.* at 557.  By baldly speculating at what Synopsys might have known thirty years before the events giving rise to this Motion, and ascribing implausible motivations to its conduct, OSD fails to overcome the Court's finding of laches.

*Orly Int'l, Inc. v. World Amenities, Inc.*, No. 25-cv-2154, 2025 U.S. Dist. LEXIS 152429, at *8–9 (C.D. Cal. Aug. 6, 2025) (Fischer, J.), is on all fours.  There, the Court dismissed the plaintiff's Lanham Act claim where its complaint contained only "conclusory" allegations, relying on the "apparent similarity" in the parties' marks as well as "general and nonspecific" assertions about the similarity of the parties' goods.  *Id.* at *7.  The Court held that these allegations of trademark infringement were merely "legal conclusions unsupported by well-pleaded factual allegations." *Id.* at *8–9.  Similarly, in *Hedrick v. Cnty. of Ventura*, No. 14-cv-4506, 2014 WL 12967548, at *3 (C.D. Cal. Nov. 10, 2014) (Fischer, J.), this Court dismissed a complaint where it only contained "conclusory and general allegations" that were "contradict[ed]" by other factual allegations in the complaint.  Both of those

MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS / Case No. 2:24-cv-10515-DSF-JC

circumstances are true here: OSD advances only conclusory allegations, which cannot be squared with other admitted facts on the face of the pleadings.

Even taken as true, OSD's new allegations do not disturb the core of the Court's findings on this factor. As the Court recognized, "Synopsys included its mark in marketing materials for CODE V® for years," and "[t]his 'open and notorious use' shows Synopsys did not try to 'hide its use of the mark,' supporting a finding of good faith." (ECF 57 at 13 (citing *Pinkette*, 894 F.3d at 1019, 1028; *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamer Ass'n*, 465 F.3d 1102, 1110 (9th Cir. 2006)).) OSD's Amended Counterclaim does not suggest otherwise. To the contrary, OSD continues to allege that by 2010 Synopsys was branding Code V® product literature with its SYNOPYS® trademark, by 2013 Synopsys' website used the SYNOPSYS® mark in connection with its Code V® optical design software, and by 2015 Synopsys posted YouTube videos associating Code V® with the Synopsys mark. (Amended Counterclaim ¶¶21, 23–28.) Thus, "Synopsys' good faith ignorance weighs in favor of applying laches." (ECF 57 at 13.)

### 5. Factor 5: Competition Between Junior and Senior Users

As the Court previously held, this factor "weighs against applying laches" given OSD's allegation that Synopsys' optical design software competes with OSD's SYNOPSYS™ tool. (*Id.* at 14.) The analysis of this factor remains unchanged.

### 6. Factor 6: Extent of Harm Suffered by Junior User Because of Senior User's Delay

The sixth laches factor considers "the prejudice suffered by Synopsys because of OSD's delay in bringing suit." (*Id.* (citing *Grupo Gigante*, 391 F.3d at 1105).) As the Court recognized, the admitted facts confirm that "during OSD's delay, Synopsys continued to invest in its optical design software business." (*Id.* (citing ECF 42, Counterclaims ¶¶22, 27).) Specifically, OSD alleged that "Synopsys 'continues to use' its mark to promote CODE V® and has 'continuously associated its SYNOPSYS® marks' with CODE V® in 'marketing, promotional, advertising, and

12

related channels and materials.'" (*Id.* (quoting ECF 42, Counterclaims ¶¶22, 27.)
These same allegations remain in OSD's Amended Counterclaim. (*See* Amended
Counterclaim ¶¶23, 28.)

In reaction to the Court's observation that "OSD does not contend that
Synopsys has not been prejudiced by its delay" (ECF 57 at 14), OSD attempts to fill
this gap with a new allegation that "Synopsys has not been prejudiced by any delay
by OSD in taking legal action against Synopsys" because:

> (i) Synopsys knew it was using its SYNOPSYS® marks to promote
> its optical design software products and services in violation of
> OSD's common law rights in its SYNOPSYS™ mark no later than
> 2010; and (ii) Synopsys knew it was using its SYNOPSYS® marks
> to promote its optical design software products and services and
> services over OSD's objections beginning in 2019, and thus was not
> relying on any action or inaction by OSD when it continued to use
> its marks despite what OSD called a "plausible breach" of OSD's
> rights.

(Amended Counterclaim ¶22.)  The Court need not accept these conclusory and
implausible allegations as true in ruling on this motion.  *Iqbal*, 556 U.S. at 681;
*Twombly*, 550 U.S. at 555–56; *Eclectic Props.*, 751 F.3d at 999.  This is particularly
true given that OSD's suggestion that Synopsys knew it was violating OSD's
common law rights cannot be reconciled with its admission that Synopsys' openly
and notoriously used its SYNOPSYS® marks to brand its optical design software for
nearly a decade before OSD ever raised any concern.  Moreover, even then, OSD only
complained about a single flyer at a college event "where the word 'SYNOPSYS'
appeared all in upper case" (Section IV.A.4, *supra*), and not about Synopsys' open
and widespread use of the mark on all of its optical design products and marketing
materials for years.  Thus, the undisputed facts establish OSD's acquiescence, not
Synopsys' willful infringement.  *Cf. Hedrick*, 2014 WL 12967548, at *3 (declining

13

1    to accept "conclusory and general allegations" where facts in the pleadings

2    contradicted those allegations).)

3        In any event, OSD's new allegations also do not affect the analysis of the sixth

4    laches factor.  As the Court recognized, this factor considers Synopsys' investment

5    "during the time that [OSD] delayed the exercise of its legal rights" (ECF 57 at 14

6    (quoting *Grupo Gigante*, 391 F.3d at 1105)—not what Synopsys was "relying on"

7    during that time period.  Here, it is undisputed that OSD did not take action for years

8    following its recognition of a supposed "plausible breach" of its trademark rights in

9    2019, and that Synopsys continued to invest in its optical design software business

10    during the interim.  (Section IV.A.2, *supra*.)  As the Court previously found, "[t]he

11    facts OSD admits … support continued investment by Synopsys" because "OSD

12    admits Synopsys 'continues to use' its mark to promote CODE V® and has

13    'continuously associated its SYNOPSYS® marks' with CODE V® in 'marketing,

14    promotional, advertising, and related channels and materials." (ECF 57 at 14.)  This

15    factor continues to "weigh[] slightly in favor of applying laches."  (ECF 57 at 14.)

16        **7.    The Factors Collectively Support Application of Laches**

17        Because OSD's new allegations do not tilt the analysis, "four of the six *E-*

18    *Systems* factors support the application of laches."  (ECF 57 at 15.)  Accordingly, "the

19    analysis 'validates the strong presumption of laches created by [OSD's] delaying past

20    the expiration of the most analogous state statute of limitations.'"  (*Id.* (quoting

21    *Pinkette*, 894 F.3d at 1028).)  Judgment in Synopsys' favor is once again warranted.

22    (*See id.* (collecting cases).)

23        **B.    OSD Does Not Sufficiently Allege an Unclean Hands Defense**

24        Alongside its Amended Counterclaim, OSD also attempts to revive its

25    affirmative defense of unclean hands, which it argued previously bars application of

26    the equitable doctrine of laches.  (ECF 60, Answer ¶6; ECF 52 at 15–18.)  But as this

27    Court previously explained, to adequately plead unclean hands, OSD's "allegations

28    must leave the court with 'a firm conviction that [Synopsys] acted with a fraudulent

14

1    intent in making the challenged claims.'" (ECF 57 at 15 (quoting *Jarrow*, 304 F.3d
2    at 842).) OSD's amended pleading fails to meet that threshold.

3        Although OSD's Amended Counterclaim adds more words, the thrust of its
4    unclean hands defense is unchanged: (1) "Synopsys misled OSD into believing that
5    Synopsys was not using its mark in association with CODE V®"; (2) "Synopsys
6    intentionally engaged in bad faith negotiations to purchase OSD's mark while,
7    unbeknownst to OSD, Synopsys actively marketed CODE V® with its Synopsys
8    name"; and (3) "Synopsys willfully and intentionally infringed on OSD's trademark
9    rights to benefit from and overwhelm OSD's goodwill associated with its mark."
10   (*Compare* Amended Counterclaim *with* ECF 57 at 15–16.) But those allegations, as
11   the Court explained, "do not provide a sufficient basis for an unclean hands defense"
12   because they "do[] not leave the Court with a firm conviction that Synopsys acted
13   with fraudulent intent." (ECF 57 at 16.) Although the Court invited OSD to "allege
14   [] additional facts in an amended pleading" to support its defense (ECF 57 at 16 n. 8),
15   OSD failed to do so. Accordingly, like its original pleading, OSD's Amended
16   Counterclaim fails to "support an inference that Synopsys willfully sought to exploit
17   the advantage of OSD's mark." (ECF 57 at 16.)

18       Instead of adding "additional facts," OSD's amended pleading merely rewords
19   the same allegations the Court already found insufficient to support unclean hands.
20   For example, OSD adds that Synopsys sought to "mislead OSD as to its intentions
21   and actions after its 2010 acquisition of ORA, and to induce OSD to not take action
22   against Synopsys with regard to Synopsys for years after its acquisition," and that
23   Synopsys "engaged in bad faith negotiations to acquire OSD's SYNOPSYS™ mark
24   without any real intent to acquire that mark from OSD." (Amended Counterclaim
25   ¶6.) But the Court already addressed found that such allegations "do not provide a
26   sufficient basis for an unclean hands defense." (ECF 57 at 15–16.)

27       OSD's Amended Counterclaim inserts two additional allegations, but neither
28   is supported by pled facts, and neither moves the needle. First, OSD alleges Synopsys

15

had "full knowledge of OSD's SYNOPSYS™ mark beginning no later than 1989," and adopted its mark "to free-ride off the goodwill associated with OSD's SYNOPSYS™ mark and otherwise take advantage of the similarity between the two companies' marks." (Amended Counterclaim ¶6.)  The Court need not credit that unsupported speculation.  *Iqbal*, 556 U.S. at 681; *Twombly*, 550 U.S. at 555–56; *Eclectic Props.*, 751 F.3d at 999.  Indeed, the admitted facts belie OSD's conclusory allegation as (1) OSD admits it is "not a large company," and (2) Synopsys did not have a product that competed with OSD until 2010—24 years after Synopsys' founding.  (Amended Counterclaim ¶¶2, 13.)  Accordingly, OSD fails to plausibly plead how or why Synopsys could or would have "take[n] advantage" of the OSD mark.  (*See* Amended Counterclaim ¶2.)  Moreover, OSD fails to controvert the Court's prior determination that Synopsys' open and notorious use "support[s] a finding of good faith" (ECF 57 at 13), and thus adds nothing to the allegations that left the Court without "a firm conviction that Synopsys acted with fraudulent intent." (ECF 57 at 16.)

Second, OSD alleges that after it informed Synopsys of a "plausible breach" it observed in September 2019, "Synopsys continued using its SYNOPSYS® trademarks to infringe OSD's rights with full knowledge that OSD objected to such use, while continuing to engage in negotiations to acquire OSD's SYNOPSYS® trademark to induce OSD to delay taking action against Synopsys." (ECF 59, Answer ¶6.)  But this allegation, too, adds nothing meaningful to facts the Court considered when it dismissed OSD's counterclaims the first time.  Even if Synopsys had knowingly infringed OSD's trademark after 2019 (an allegation the Court need not accept as true), it is ***OSD's inaction*** that creates the basis for laches.  *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006) (laches is "derived from the maxim that those who sleep on their rights, lose them") (citation omitted). Accepting OSD's position would swallow the laches defense whole and allow a claimant to overcome its own inaction merely by having identified the issue years

16

earlier, even if it knowingly sat on those claims in the interim.  And, OSD ignores that its 2019 objection was to one flyer where "the word 'SYNOPSYS' appeared all in upper case" (FAC ¶55), not to all uses by Synopsys of its mark.  Moreover, the pleadings establish it was *Synopsys* that repeatedly reached out to attempt negotiations in 2019 and 2020, while *OSD* failed to engage in discussions or assert its claim—instead going silent until 2024 when it eventually sent the demand letters that led to this lawsuit.  (*See* FAC ¶¶52–56, 58–60, Ex. 30–33, 37, 43–44; Amended Counterclaim ¶22; ECF 60 ¶22, Ex. 2.)  As a result, it is not surprising that OSD does not even allege that the parties engaged in negotiations after Ms. Cheong identified that "plausible breach," much less identify any supposed Synopsys misconduct that occurred during those non-existent negotiations.  OSD's allegation that Synopsys willfully infringed and induced OSD's delay is implausible and irreconcilable with OSD's contemporaneous conduct.

Accordingly, the Amended Counterclaim does not create "a firm conviction that Synopsys acted with fraudulent intent." (*See* ECF 57 at 16.)  OSD still offers just a single alleged misrepresentation—Synopsys' statement that it had no "intention or plan to market any individual product under the name 'Synopsys' now or in the future"—and adds to it a series of conclusory allegations devoid of supporting facts. (*See* ECF 60, Answer ¶6.)  As the Court previously noted, even taking these allegations as true, they do not establish "that Synopsys acted with fraudulent intent to establish the level of culpability required for unclean hands."  (ECF 57 at 16.)  Nothing in OSD's Amended Counterclaim changes that analysis and laches applies.

**C.    The Facts Set Forth in Synopsys' Answer Also Compel Dismissal**

In answering OSD's Amended Counterclaim, Synopsys cited and attached the deposition testimony of OSD's founder and sole employee until February 2019, Mr. Dilworth.  (ECF 60-1.)  Accordingly, though it need not do so to find OSD's claims barred by laches, the Court can consider his testimony in resolving this motion.  *See, e.g.*, *Chavez*, 2018 WL 8642837, at *2 ("In considering a Rule 12(c) motion, the court

17

should review 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." (citation omitted)); *Pratt v. Hawaii*, No. 17-cv-00599, 2019 WL 1548570, at *6 (D. Haw. Apr. 9, 2019) ("the Court can consider the information attached to the Answer") (emphasis omitted); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 147 (N.D. Cal. 2020) (considering documents attached to the answer "without converting the instant motion into one for summary judgment").[2]  Mr. Dilworth's testimony only confirms the undisputed facts admitted and alleged by OSD, and further compels a finding of laches.

Synopsys cited Mr. Dilworth's testimony to deny several of the allegations in OSD's Amended Counterclaim.  For example, OSD repeatedly alleges that Synopsys somehow misled OSD about its use of the SYNOPSYS® mark, or concealed its use of the mark to market the Code V® product.  (*See, e.g.*, Amended Counterclaim ¶¶2–3, 18–19, 22–28.)  In response, Synopsys explained that "Don Dilworth, the founder of OSD's predecessor and its sole employee until he sold the business to OSD's current owner in 2019, testified that he was aware of Synopsys' use of the SYNOPSYS® company name and logo in connection with the sale of optical design software, but affirmatively chose not to take any action against Synopsys, Inc."  (ECF

---

[2] Courts in the Ninth Circuit and this District are split on whether documents attached to an answer can be considered in the context of a Rule 12(c) motion.  *See, e.g.*, *Kobashi v. Sentry Ins.*, No. 20-cv-718, 2021 WL 1231425, at *2 (C.D. Cal. Mar. 2, 2021) (identifying split in authority).  Synopsys respectfully submits that the *Chavez*, *Pratt*, and *Threshold* line of cases is consistent with the express language of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading ***for all purposes***") (emphasis added).

MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR
JUDGMENT ON THE PLEADINGS / Case No. 2:24-cv-10515-DSF-JC

60 ¶2 (citing ECF 60-1 at 33:1–8, 51:20–52:19, 62:1–67:2, 69:25–71:24, 72:4–73:19, 75:10–77:7, 84:11–87:1); *see also* ECF 60 ¶¶3, 18–19, 22–28 (same).)

Similarly, Synopsys cited Mr. Dilworth's testimony to deny OSD's allegations that Synopsys made "false and misleading" representations in a 2018 email chain to hide from OSD the true fact that it was branding Code V® with its SYNOPSYS® mark. (Amended Counterclaim ¶¶18–19.)  As Synopsys explained, Mr. Dilworth understood Synopsys to represent merely that it would not change the name of its Code V® software to match the name of OSD's "SYNOPSYS" product—and it has not done so. (ECF 60 ¶18 (quoting ECF 60-1 at 95:6–96:23); *see also* ECF 60 ¶19 (same).)

Further still, Synopsys relied on Mr. Dilworth's testimony to deny OSD's allegation that Synopsys' use of its SYNOPSYS® mark "caus[ed] both forward and reverse confusion in the optical design software marketplace to OSD's damage." (Amended Counterclaim ¶3; *see also id.* ¶29 (alleging "Synopsys' actions have damaged OSD and its SYNOPSYS™ mark").  As Synopsys pointed out, Mr. Dilworth never experienced any instances of actual confusion in the marketplace during his ownership of OSD, and he agreed that those in the field knew about the competing products in the market and who sold them. (ECF 60 ¶3 (quoting ECF 60-1 at 31:10–22, 60:2–9, 83:14–84:1); *see also* ECF 60 ¶29 (same).)

In short, the portions of Mr. Dilworth's testimony cited in and attached to Synopsys' Answer confirm the facts OSD itself has admitted or pled, and confirm that OSD's Amended Counterclaim is barred by laches.  Contrary to OSD's allegations of unclean hands, Mr. Dilworth testified that he both (1) knew about Synopsys' use of its trademark in connection with CODE V® *long before* 2019, and (2) was not misled by the single communication that OSD repeatedly invokes. (ECF 60 ¶¶2–3, 18–19, 22–28.)  Contrary to OSD's allegation that it was "lulled [] into a false sense of security that Synopsys would not use its SYNOPSYS® marks to promote … Code V," Mr. Dilworth testified that he *affirmatively chose not to take*

MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS / Case No. 2:24-cv-10515-DSF-JC

*any action* against Synopsys before selling the business in 2019. (*Compare* Amended Counterclaim ¶18, *with* ECF 60 ¶18.)  And, contrary to OSD's bare allegations that Synopsys' use was confusingly similar to OSD's, Mr. Dilworth testified that no one in the relevant optical design software market would have been confused about which company sold which product.  (*Compare* Amended Counterclaim ¶¶3, 30 *with* ECF 60 ¶¶3, 30.)  Judgment on the pleadings is warranted, and OSD's claims should be dismissed.

### D.    Synopsys Has Not Used a False Designation

As set forth in Synopsys' initial motion for judgment on the pleadings, OSD also fails to state a claim for false designation of origin under the Lanham Act. Synopsys is lawfully entitled to use its SYNOPSYS® marks and is not accused of making any false statements in commerce about the source of its goods and services. (ECF 50-1 at 17–19.)  Although the Court did not reach this question in dismissing OSD's claims, it noted that "[i]f OSD decides to amend, it should consider Synopsys' arguments on these issues."  (ECF 57 at 17 n. 11.)  However, OSD's Amended Counterclaim continues to assert a False Designation of Origin claim without pleading any facts that would support such a cause of action.  Accordingly, judgment is warranted for this additional reason.

### E.    Leave to Amend Should Not Be Granted

OSD should not be given a third bite at the apple on its Lanham Act counterclaim.  As the Court noted, leave to amend may be denied due to, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment."  (ECF 57 at 17 (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010)).)  OSD has already been given an opportunity to amend its counterclaim and its amendments failed to cure the deficiencies.  That is not because "OSD, following the fair notice standard, omitted facts from its answer and counterclaims that would have" stated a claim to relief, *contra* ECF 57 at 16 n. 8—it is because OSD has no claim to assert.  Accordingly, any further amendment

would be futile and serve only to needlessly prolong this litigation.  *See Wade-James v. Genzyme Corp.*, No. 24-cv-1364, 2025 WL 438686, at *4 (C.D. Cal. Feb. 7, 2025) (Fischer, J.) ("The Court previously granted [plaintiff] leave to amend to cure this same deficiency, and she fails to do so.  As such, the Court finds further amendment would be futile and declines to grant leave to amend again.").

## V.    CONCLUSION

For the reasons set forth above, Synopsys respectfully requests that judgment be granted in its favor on OSD's Amended Counterclaim, without leave to amend.


Dated:  November 20, 2025            Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By:    */s/ Krista S. Schwartz*
       Krista S. Schwartz
       Barrington Dyer
       Aliza George Carrano (*Pro Hac Vice pending*)
       Devon W. Edwards (*Pro Hac Vice pending*)
       Ann N. Hopkins
       Jacob Karim
       Dane Sowers (*Pro Hac Vice pending*)

       Attorneys for Plaintiff
       SYNOPSYS, INC.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Synopsys, Inc., certifies that this brief contains 6,928 words, which complies with the word limit of L.R. 11-6.1.

Date:  November 20, 2025        _/s/ Krista S. Schwartz_
                                 Krista S. Schwartz

MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR
JUDGMENT ON THE PLEADINGS / Case No. 2:24-cv-10515-DSF-JC